THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MATTHEW JAMES, Defendant-Appellant.

First District (5th Division)   No. 83—1323

Opinion filed October 17, 1986.

MURRAY, J., dissenting.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Frank G. Zelezinski, and William F. Dorner, Assistant State's Attorneys of counsel), for the People.

JUSTICE PINCHAM delivered the opinion of the court:

Following a jury trial defendant, Matthew James, was found guilty of murder, rape, and robbery. He was sentenced to imprisonment terms of 50 years for murder and 10 years for robbery, the sentences to run concurrently.[1] The record reveals that on the day after the sentences were imposed, the court entered the following order: "By order of court sentences imposed for robbery ten (10) years [in the] Illinois Department of Corrections vacated. Corrected mittimus to read fifty (50) years for murder." Defendant appeals from his murder conviction. The following evidence was adduced at trial.

On June 26, 1983, Josephine Hayes was found dead on a couch in her apartment by the building manager. Her legs were tied, her face was covered with rags and she was wearing only a white blouse. A medical examination revealed that she had been raped and that her death was caused by strangulation.

A few days previously, Eddie Meeks and several men had helped the victim move into her apartment. Meeks and the other men were taken into custody and questioned by the police regarding the homicide. The other men were released but the officers continued to question Meeks.

During the second day of questioning, Meeks confessed that he had participated in the murder, rape, and robbery of Josephine Hayes. Meeks' confession implicated the defendant, Matthew James, in the commission of the offenses. Based on Meeks' confession, the officers arrested James. James was questioned by the police and confessed his participation in the crimes but implicated Meeks as the principal offender.

James and Meeks were jointly indicted for the murder, rape, rob-

---

[1]At the sentencing hearing, the judge stated, "I believe this is a felony-murder case. I believe that's what the verdict was based on, so, the rape was an element of the murder. So I believe the rape therefore is assumed in the murder conviction."

bery, and home invasion. Prior to trial, James and Meeks each moved to quash their warrantless arrests on the grounds that the police lacked probable cause to arrest either of them. They also moved to suppress their statements because, they argued, each of their statements was fruit of their illegal arrests.

Pretrial hearings were held on the suppression motions. James and Meeks contended there was no probable cause to arrest either of them and that they confessed and gave incriminating statements against each other only because they had been beaten and subjected to threats and intimidation.

The trial court found there was no probable cause to arrest Meeks, quashed his arrest, and suppressed his confession. The court stated:

"I find that the police in the matter of the arrest of Mr. Meeks did have probable cause to make an arrest, however, that probable cause, I believe, existed after the arrest had, in fact, been made.

An arrest cannot be justified by what accidentally is learned. Justification for [a] search and arrest cannot be based upon what the conditions of that arrest and search may be.

\* \* \*

I do not feel it was reasonable for the police to assume that they had grounds to make an arrest of Mr. Meeks. \* \* \*.

Therefore, the ruling is, the motion to quash the arrest of Edward Meeks is allowed, and concurrent with that is an order suppressing the statements made during the course of that arrest."

Although Supreme Court Rule 604(a) (87 Ill. 2d R. 604(a)) conferred upon the State the right to appeal the trial court's order which suppressed Meeks' confession, the State did not appeal the order. Instead the State entered a *nolle prosequi* of the charges against Meeks, and he was discharged.

During the suppression hearing, with regard to probable cause for the arrest of defendant James, Detective John Leonard, who was assigned to investigate the homicide, testified under cross-examination:

"Q. Detective Leonard, is it true that the first time you were given any information implicating Matthew James in the crime or crimes that you are investigating was on June 27, 1982?

A. Yes sir, that's correct.

\* \* \*

Q. And, Detective Leonard, you never got any information from any other source implicating Matthew James in the crime

before you went to 1421 Rockwell on June 27th, to get Matthew James, did you?

THE COURT: Do you understand the questions?

THE WITNESS: Yes, correct.

MR. FOX: You never got any information from anyone other than Edward Meeks before sending Howe or O'Brien to 1421 South Rockwell?

MR. RAMANO: Objection, asked and answered.

THE COURT: Ask another question.

MR. FOX: The only information you had about Matthew James was when you sent Howe and O'Brien to 1421 North Rockwell, was the information you got from Edward Meeks, is that right?

A. Yes."

It is clear from Detective Leonard's testimony that Meeks' confession was the sole basis for James' arrest. There is no other evidence in the record to establish probable cause for James' arrest. The State does not contend otherwise.

In upholding the validity of James' arrest, the judge stated:

"I believe the police clearly did have probable cause prior to making the arrest, notwithstanding the fact that I suppressed the fruits of the Meeks arrest; and considering very carefully the case of Wong Sun versus U.S., recall very vividly the cast of characters involved therein, and I find that in a posit to this situation, to the extent I think, it directs me to deny the motion to quash the arrest of Mr. Matthews [*sic*]."

James was later convicted following a jury trial during which his confession was admitted into evidence.

## I

James contends that his arrest was illegal because it lacked probable cause and that his confession should therefore have been suppressed. As to James' warrantless arrest, we note that the fourth amendment to the United States Constitution (U.S. Const., amend. IV) and article I, section 6, of the Illinois Constitution (Ill. Const. 1970, art. I, sec. 6), demand that a warrantless arrest be supported by probable cause to be constitutionally valid.

Although in denying James' motion to quash his arrest the trial judge said that he "recall[ed] very vividly the cast of characters involved in" and had "very carefully" considered *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407, the trial court nevertheless failed to explain why *Wong Sun* was inapplicable or

why *Wong Sun* "direct[ed]" the court to deny James' motion.

In *Wong Sun*, Federal narcotics agents in San Francisco arrested Hom Way after surveying him for six weeks. The agents found heroin in his possession. During questioning Hom Way told the agents that he had purchased an ounce of heroin the night before from Blackie Toy, proprietor of a laundry of Leavenworth Street. The agents went to the laundry on Leavenworth Street which was operated by James Wah Toy. An agent attempted to gain entry into the building by stating that he had come to pick up some laundry. Toy told the agent to come back during business hours, whereupon the agent announced his office, forced entry into the building, chased Toy down a hallway into Toy's bedroom and placed Toy under arrest.

The agents searched Toy's living quarters but found no narcotics. They informed Toy that Hom Way had told them that he (Hom Way) had purchased narcotics from Toy. Toy denied that he sold narcotics but stated that he knew someone who did and that he knew that person as "Johnny." Toy described a house on 11th Avenue where, he told the agents, Johnny lived. Toy also described the bedroom in Johnny's house where he said Johnny kept heroin and where he and Johnny had smoked drugs the previous night. The agents went immediately to the house described by Toy and upon entering found a man in the bedroom whose name was Johnny Yee. During questioning Yee removed heroin from a bureau drawer and turned it over to the agents. Yee told the agents that Toy and Sea Dog brought the heroin to him four days previously. When questioned about the identity of Sea Dog, Toy revealed that Sea Dog was Wong Sun. The agents then went to Won Sun's home and placed him under arrest.

The agents did not seek or obtain a search or arrest warrant for any of the foregoing arrests and searches. Toy and Wong Sun were charged in a two-count indictment with conspiracy to violate the narcotic laws and concealment of illegally imported heroin. They were acquitted of the conspiracy count but were found guilty of the count which charged concealment of the drugs discovered in Johnny Yee's bedroom which Yee surrendered to the agents.

At trial the court admitted into evidence the incriminating statements Toy made in his bedroom when he was arrested, the heroin surrendered to the agents by Johnny Yee, and Toy and Wong Sun's post-arraignment, unsigned statements. Toy and Wong Sun contended that this evidence was inadmissible because it was the fruit of their illegal, warrantless arrests.

The United States Court of Appeals held that the defendants' warrantless arrests were illegal under the fourth amendment because

they were not based on probable cause. The court affirmed the defendants' convictions, however, on the ground that the complained-of evidence was not the fruit of either defendant's illegal arrest and was therefore properly admitted.

The Supreme Court agreed that the arrests of Toy and Wong Sun were without probable cause. Addressing Toy's arrest, the court held that the information given to the narcotics agents by their prisoner, Hom Way, was insufficient to establish probable cause to arrest Toy. The court pointed out that the agents had no basis to rely on Hom Way's information since he had never before provided them with information. The court further pointed out:

"It is conceded that the officers made no attempt to obtain a warrant for Toy's arrest. The simple fact is that on the sparse information at the officers' command, no arrest warrant could have issued ***. [Citation.] The arrest warrant procedure serves to insure that the deliberate, impartial judgment of a judicial officer will be interposed between the citizen and the police, to assess the weight and credibility of the information which the complaining officer adduces as probable cause. [Citation.] To hold that an officer may act in his own, unchecked discretion upon information too vague and from too untested a source to permit a judicial officer to accept it as probable cause for an arrest warrant, would subvert this fundamental policy." *Wong Sun v. United States* (1963), 371 U.S. 471, 481-82, 9 L. Ed. 2d 441, 451-52, 83 S. Ct. 407, 414.

After holding that Toy's arrest was without probable cause and that his fourth amendment right to be secure against an unreasonable search and seizure had been violated, the court further held that Toy's statements in his bedroom to the agents should have been excluded and were inadmissible as evidence against Toy because the statements were fruits of Toy's unlawful arrest.

Additionally, the court held that the exclusion of Toy's statements required excluding the narcotics taken from Yee, whose statement led the police to arrest Toy. The court stated, "We think it clear that the narcotics were 'come at by the exploitation of that illegality' and hence that they may not be used against Toy." *Wong Sun v. United States* (1963), 371 U.S. 471, 488, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417.

■■ Applying the principles in *Wong Sun* governing the inadmissibility of the illegally obtained "fruit of the poisonous tree" to the case before us requires that the "fruit of the poisonous tree," *i.e.*, James' confession to the police, should have been suppressed. Its admission

into evidence against James violated his constitutional right to be secure against an unreasonable search and seizure which right is guaranteed by the fourth amendment to the United States Constitution and article I, section 6, of the Illinois Constitution of 1970.

In *Wong Sun* Toy was arrested solely on Hom Way's uncorroborated, incriminating statement to the arresting agents. Toy's arrest was held to be without probable cause and a violation of his fourth amendment right against an unreasonable search and seizure. Toy's post-arrest, incriminating statements were the fruit of his illegal arrest and were therefore inadmissible as evidence against him. In the case before us, James was arrested solely on Meeks' uncorroborated, incriminating statements to his arresting officers. James' arrest, like Toy's arrest in *Wong Sun*, was without probable cause and in violation of his fourth amendment right to be secure against an unreasonable search and seizure. James' post-arrest, incriminating statements, like Toy's, should have been suppressed and should not have been admitted into evidence.

Regarding Meeks' arrest, the record fails to support the trial court's ruling that the police "clearly did have probable cause prior to making the arrest, notwithstanding the fact that [the court] suppressed the fruits of Meeks' arrest." The court failed to state on what evidence it relied to establish probable cause for Meeks' arrest, aside from Meeks' confession to the officers. Our thorough review of the record fails to reveal any other evidence, and the State does not contend that any other evidence exists.

The State's reliance on *People v. Bell* (1981), 96 Ill. App. 3d 857, 421 N.E.2d 1351, as authority for James' arrest and the admission of his post-arrest confession, is misplaced. In *Bell*, Hosea Banks, a private citizen who was not under arrest, furnished the investigating officers with highly probative, independent and corroborative evidence on which the officers, in part, predicated their arrests. The appellate court pointed out that probable cause for Bell's arrest was that Banks had identified a picture of the body as that of his brother, that Banks went with the police to a residence and examined a telephone number on a door which Banks said was similar to his brother's number, and that Banks identified to the police addresses, a nickname and a threat which were all written on the door. Also, Banks accompanied the police and identified one of the alleged offenders walking down the street. This offender was arrested for murder and was later identified as one of the defendants. 96 Ill. App. 3d 857, 869-70, 421 N.E.2d 1351.

Concluding that these facts established probable cause for the

defendants' arrest independent of the accomplice's confession, the court held:

> "Hosea Banks was a private citizen and not a paid professional informant. The police officers, therefore, were justified in relying upon his information without independent verification or examination of his reliability. [Citations.] Viewing the totality of the facts and circumstances known to the police officers at the time of Hayes' arrest, we find that the trial court's determination that the officers had probable cause to arrest Hayes was not manifestly erroneous.
>
> As to the lawfulness of Bell's arrest, where a co-offender who is under arrest and in custody supplies the police with a 'tip' implicating alleged accomplices such statement of the co-offender may constitute probable cause for the arrest of the alleged participating accomplices. [Citation.]
>
> In the instant case, Hayes, Lonnie Hampton and Andrew Hampton all independently identified Bell as also being involved in the kidnapping and murder of Joseph Banks. This information would have led a man of reasonable caution to believe that Bell had participated in the offense. The police thus had probable cause to arrest Bell.
>
> Because defendants' arrests were based on probable cause and therefore lawful, the admission of defendants' statements into evidence was proper." 96 Ill. App. 3d 857, 870, 421 N.E.2d 1351.

*Bell* is not authority for James' arrest or the admission of his confession into evidence in the case before us.

Also, the State and the dissent urge that the defendant's arrest in the instant case was constitutionally valid under the good-faith doctrine pronounced by the Supreme Court in *United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405. *Leon* is not analogous to and should not be applied to the case before us. In *Leon*, unlike in the case at bar, the good-faith issue was presented in the trial court and in the court of appeals and was properly presented, briefed and argued in the Supreme Court. The Supreme Court pointed out:

> "In response to a request from the Government, *the [District] court made clear that Officer Rombach had acted in good faith*, but it [the District Court] rejected the Government's suggestion that the fourth Amendment exclusionary rule should not apply where the evidence is seized in reasonable, *good-faith reliance on a search warrant.*

The District Court denied the government's motion for reconsideration ***.

*** [T]he District Court properly suppressed the fruits of the search. The Court of Appeals refused the Government's invitation to recognize a good-faith exception to the Fourth Amendment exclusionary rule.

The Government's petition for certiorari expressly declined to seek review of the lower courts' determinations that the search warrant was unsupported by probable cause and presented only the question '[w]hether the Fourth Amendment exclusionary rule should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective.' We granted certiorari to consider the propriety of such a modification." (Emphasis added.) 468 U.S. 897, 903-05, 82 L. Ed. 2d 677, 686-87, 104 S. Ct. 3405, 3411-12.

In his concurring opinion, Justice Blackmun wrote:

"'The Court today holds that evidence obtained in violation of the Fourth Amendment by officers acting in objectively reasonable reliance on a search warrant issued by a neutral and detached magistrate need not be excluded, as a matter of federal law, from the case-in-chief of federal and state criminal prosecutions. In so doing, the Court writes another chapter in the volume of Fourth Amendment law opened by *Weeks v. United States* 232 U.S. 383, 34 S. Ct. 341, 58 L. Ed. 652 (1914). I join the Court's opinion in this case and the one in *Massachusetts v. Sheppard* [(1984), 468 U.S. 981, 82 L. Ed. 2d 737, 104 S. Ct. 3424] because I believe that the rule announced today advances the legitimate interests of the criminal justice system without sacrificing the individual rights protected by the Fourth Amendment. I write separately, however, to underscore what I regard as the unavoidably provisional nature of today's decisions." 468 U.S. 897, 927, 82 L. Ed. 2d 677, 701, 104 S. Ct. 3405, 3423-24 (Blackmun, J., concurring).

In the case before us the good-faith argument was not relied upon in the trial court as in *Leon*. At the hearing of the defendant's suppression motion, the State did not raise the good-faith argument, and the defendant relied on a lack of probable cause for his arrest and attenuation. The trial court denied the motion on those grounds.

■ The officer's good faith was not an issue. Because the good-faith contention was not presented or ruled upon by the trial court and was not properly presented, briefed, or argued in this court, it is

inappropriate for this court to decide this issue.[2]

It is inappropriate for this court to decide the good-faith contention also because this, an intermediate court of review, is not the proper tribunal to decide a constitutional question of first impression which so radically modifies State law. Again it should be noted that in *Leon* the Supreme Court stated that the district court "rejected the Government's suggestion that the Fourth Amendment exclusionary rule should not apply where evidence is seized in reasonable, good-

---

[2]The pertinent points argued in defendant's brief for reversal were (1) "[b]ecause defendant's arrest was unlawful as the product of a codefendant's confession [which was] suppressed as the fruit of the [codefendant's] illegal arrest, defendant's resulting confession was thereby tainted and should have been suppressed;" and (2) "[w]here defendant James confessed only after being confronted with codefendant Meeks' illegally secured confession, the [James'] confession became inadmissible and should have been suppressed."

The State's brief in this court for the first time raised the good-faith argument. The State's meager good-faith argument at page 14 of its 32-page brief is as follows:

"Most especially, however, as is recognized by all the relevant authorities, *the most important factor is the purpose and flagrancy of the purported official misconduct, Taylor, supra,* 102 S. Ct. at 2667, in order to serve the proper purpose of the exclusionary rule—to deter improper police conduct. *Gabbard, supra,* 78 Ill. 2d at 780-79. In the case at hand, *that purpose would not be served at all where there is no question that probable cause existed to arrest defendant,* and where the *police acted reasonably and in good faith* effectuating the arrest of defendant. *** Thus, *the purpose of the exclusionary rule is not served where the police acted reasonably and in good faith in arresting defendant.*

Consequently, even if the Court should conclude that defendant's arrest was illegal, defendant's motion to quash the arrest and to suppress statements made by him thereafter, was properly denied by the trial court where those statements were purged of any taint stemming from the arrest by virtue of an intervening event following the arrest, the complete lack of any improper police purpose in making the arrest, ***." (Emphasis added.)

*Leon* was decided by the Supreme Court on July 5, 1984, before oral argument of the instant case in this court. After oral argument the State's request to cite *Leon* as additional authority in this case was granted. The State's request in pertinent part merely stated:

"2. In the case at bar, defendant raises the issue of whether the fruits of a past unlawful arrest of another which led to his own arrest and confession so tainted his confession that the trial court should have suppressed his confession;

3. The opinion on *United States v. Leon,* 104 S. Ct. 3405 (1984), herein attached, discusses this very issue in the analogous context of search warrants and would be helpful in the resolution of this point;

4. This case was not previously included in the People's brief.

WHEREFORE, the People of the State of Illinois respectfully pray that this Honorable Court grant this Motion to Cite Additional Authority."

faith reliance on a search warrant[,]" and that "[t]he Court of Appeals refused the Government's invitation to recognize a good-faith exception to the Fourth Amendment exclusionary rule." *(United States v. Leon* (1984), 468 U.S. 897, 904, 905, 82 L. Ed. 2d 677, 686, 686, 104 S. Ct. 3405, 3411, 3411.) Of greater significance, the Supreme Court declared:

> "The Court of Appeals applied the prevailing legal standards to Officer Rombach's warrant application and concluded that the application could not support the magistrate's probable-cause determination. ***
>
> Having determined that the warrant should not have issued, *the Court of Appeals understandably declined to adopt a modification of the Fourth Amendment exclusionary rule that this Court had not previously sanctioned.*" (Emphasis added.) 468 U.S. 897, 925-26, 82 L. Ed. 2d 677, 700, 104 S. Ct. 3405, 3423.

The Supreme Court further observed in *Leon*: "As yet, we have not recognized any form of good-faith exception to the Fourth Amendment exclusionary rule." (468 U.S. 897, 913, 82 L. Ed. 2d 677, 692, 104 S. Ct. 3405, 3416.) But after modifying the fourth amendment exclusionary rule in *Leon* so as not to bar the use in the prosecution's case in chief of evidence obtained by officers, who acted in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid for lack of probable cause, the Supreme Court further proclaimed: "[N]o Fourth Amendment decision marking a 'clear break with the past' has been applied retroactively." 468 U.S. 897, 912, 82 L. Ed. 2d 677, 691-92, 104 S. Ct. 3405, 3416.

It should be further noted that *Leon* was a Federal case which exclusively involved the Supreme Court's interpretation and application of the Federal Constitution—the fourth amendment. *Leon* did not involve the interpretation or application of the law of search and seizure under article I, section 6 of the Illinois Constitution in a State court proceeding for violation of a State criminal statute.

In *Leon* the Supreme Court modified the fourth amendment exclusionary rule to admit evidence in the prosecution's case in chief seized by officers acting in good-faith reliance on and in execution of an invalid search warrant issued by a detached and neutral magistrate. The court did not indicate that such a modification should or would be extended to a warrantless arrest.

The language and rationale of *Leon* indicate that the good-faith modification of the fourth amendment is inapplicable in the absence of a magistrate's warrant. The court exclusively and expressly relied on

the magistrate's issuance of the search warrant as the prerequisite for its good-faith modification. The court stated:

"Standing to invoke the [exclusionary] rule has thus been limited to cases in which the prosecution seeks to use the fruits of an illegal search or seizure against the victim of police misconduct. [Citations.]

\* \* \*

Because a search warrant 'provides the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer "engaged in the often competitive enterprise of ferreting out crime." ' [citations], *we have expressed a strong preference for warrants* and declared that 'in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fail.' [Citations.] \*\*\* [T]he preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination. [Citations.]

\* \* \*

Judges and magistrates are not adjuncts to the law enforcement team; as neutral judicial officers, they have no stake in the outcome of particular criminal prosecutions. The threat of exclusion thus cannot be expected significantly to deter them [from misconduct]. Imposition of the exclusionary sanction is not necessary meaningfully to inform judicial officers of their errors \*\*\*.

\* \* \*

In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. '[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law. [Citation.]'

\* \* \*

[F]or '*a warrant issued by a magistrate normally suffices to establish*' that a law enforcement officer has '*acted in goodfaith* in conducting the search. [Citation.]'

\* \* \*

*When officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith* without a substantial expenditure of judicial time." (Emphasis added.) 468 U.S. 897, 910, 913-14, 917, 921-22, 924, 82 L. Ed. 2d 677, 690, 692-93, 695, 697, 699, 104 S. Ct. 3405, 3414, 3416-

17, 3418, 3420, 3422.

From the foregoing language it is clear that the good-faith modification of the exclusionary rule is premised on the officers' acquisition of a warrant from a detached and neutral magistrate. It is also clear that the court made "the imprimature of a judicially issued warrant *** a factor [if not the factor] in determining whether the good-faith exception to the exclusionary rule applies," and contrary to the dissent's contention in the instant case, this court has not "put form over substance."

The following suppositious language of the dissent cannot be supported:

> "In the instant case, had the involved officers secured a warrant for the arrest of Meeks from a detached and neutral judge and they objectively reasonably relied on it in arresting Meeks, the arrest of James and use of his confession would without doubt have been constitutionally permissible even if the Meeks warrant were later found to be invalid."

The officers did not have probable cause nor did they obtain, attempt to obtain, or could they have obtained a warrant for the arrest of Meeks. In the absence of a warrant or probable cause for Meeks' arrest, the dissent's assertion "that the original warrantless arrest of Meeks was in good faith" is groundless. A *fortiori*, a good-faith invalid arrest warrant for Meeks would not support a determination that the officers' warrantless arrest of James was in good faith. *Leon* does not hold that the good-faith modification of the fourth amendment exclusionary rule is applicable to a warrantless arrest.

In *People v. Joseph* (1984), 128 Ill. App. 3d 668, 470 N.E.2d 1303, the defendant's arrest was based on information received by the arresting officers from a police mobile computer unit that defendant was wanted on a bond-forfeiture warrant which had, in fact, been recalled 11 days earlier. The defendant filed a motion to suppress the drugs seized from him when he was arrested. The trial court denied the motion. On review the State asked the court to consider the Supreme Court's decision in *United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405. This court refused and held:

> "We are not convinced that the good-faith exception recognized by the Supreme Court in *Leon* is applicable to the case at bar. In that case, the court dealt with evidence seized by police officers acting on a facially valid search warrant which was issued by a State court judge after an independent determination of probable cause. In the case at bar, no such safeguard or intervening factor is present.

* * *

Moreover, it is our opinion that the good-faith reliance of the arresting officer, in acting upon information provided to him through police channels, cannot overcome the intrusion made upon defendant's fourth amendment rights." *People v. Joseph* (1984), 128 Ill. App. 3d 668, 672, 470 N.E.2d 1303.

In *People v. Potter* (1986), 140 Ill. App. 3d 693, 489 N.E.2d 334, the defendants, who were used-car dealers, moved to suppress evidence seized during an inspection conducted under the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 5—403). This court held that the warrantless search of the defendants' records was not authorized under the statute and that the seized records were properly excluded. The court stated:

"Finally, the State argues for a good-faith exception to the exclusionary rule (*United States v. Leon* (1984), 468 U.S. [897], 82 L. Ed. 2d 677, 104 S. Ct. 3405). Such an exception applies only to good-faith violations of the fourth amendment resulting from searches conducted pursuant to technically invalid warrants. The exception is clearly inapplicable since the exclusionary rule applied here is not based on the fourth amendment and there was no warrant issued." *People v. Potter* (1986), 140 Ill. App. 3d 693, 698, 489 N.E.2d 334.

A final comment is deserved on the dissent's conclusion that *Leon* holds that the fourth amendment "never was intended to confer a benefit on *all guilty defendants*." (Emphasis added.) Such language or inference is not to be found in *Leon*. Surely the court did not hold or intend to hold in *Leon* that the fourth amendment conferred rights on only some guilty defendants.

■ The State contends that James knowingly and voluntarily waived his *Miranda* rights and that intervening circumstances attenuated any unlawful taint from his illegal arrest. This contention is unacceptable. First, attenuation of James' confession to remove the unlawful taint of his unlawful arrest was not the basis on which the trial court admitted his confession into evidence. The trial court did not hold that James' arrest was illegal or that his confession was attenuated. Rather, the trial court held that the arrest was lawful and attenuation of James' confession was therefore not considered by the trial court in determining the validity and admissibility of his confession.

Second, there was no evidence on which attenuation could be predicated, except the officers' *Miranda* warnings to James, which are inadequate for the purpose the State advances. Our decision on this point is controlled by *Brown v. Illinois* (1975), 422 U.S. 590, 45

L. Ed. 2d 416, 95 S. Ct. 2254. In that case Brown was arrested without a warrant for the murder of Page Corpus after the police had obtained a list of Corpus' acquaintances, which included Brown's name. Brown was given his *Miranda* rights and then questioned about Corpus' murder. During questioning Brown confessed his involvement, with Jimmy Claggett, in the murder of Corpus. The officers toured several areas with Brown in search of Claggett. After about 2½ hours the officers arrested Claggett. A few hours later Brown was again given *Miranda* warnings and a court-reported confession was taken.

Brown and Claggett were jointly indicted for Corpus' murder. Prior to trial, Brown moved to quash his arrest and suppress his confessions on the grounds that his arrest was illegal and that his confessions were obtained in violation of his fourth amendment right. The motions were denied and Brown was subsequently tried and convicted for murder.

On appeal the Supreme Court of Illinois held that Brown's arrest was without probable cause and therefore was illegal. (*People v. Brown* (1974), 56 Ill. 2d 312.) The Illinois Supreme Court concluded, however, that the *Miranda* warnings served to break the causal connection between Brown's illegal arrest and his confessions and that Brown's confessions were sufficiently an act of free will to purge the taint of the illegal arrest. Citing *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407, the court held that admission of Brown's confession was not error.

The Supreme Court of the United States stated that it surmised that the Illinois Supreme Court held that *Miranda* warnings in and of themselves broke the causal chain between the illegal arrest and the confession such that the confession, even if induced by the continuing effects of unconstitutional imprisonment, was admissible so long as it was voluntary and not coerced. The court stated, "Because of our concern about the implication of our holding in *Wong Sun v. United States* [citation] to the facts of Brown's case, we granted certiorari." *Brown v. Illinois* (1975), 422 U.S. 590, 597, 45 L. Ed. 2d 416, 423, 95 S. Ct. 2254, 2258.

The court explained that *Miranda* rights are premised on the fifth amendment's guarantee against coerced self-incrimination rather than on the fourth amendment right to be secure against an unreasonable search and seizure. The court further explained that even if statements are found to be voluntary under the fifth amendment, such statements may nevertheless be inadmissible if obtained in violation of the fourth amendment. The court stated:

"In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, Wong Sun requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint.' [Citation.] Wong Sun thus mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment." *Brown v. Illinois* (1975), 422 U.S. 590, 602, 45 L. Ed. 2d 416, 426, 95 S. Ct. 2254, 2261.

The court further pointed out in *Brown* that waiver of *Miranda* warnings is but one of several factors to be considered in determining whether a confession has been obtained by exploiting an illegal arrest. Other factors involved in the decision-making process of the admissibility of a confession following an illegal arrest, the court held, are the temporal proximity of the illegal arrest and the confession, the presence of intervening circumstances and the purpose and flagrancy of the official misconduct. (*Brown v. Illinois* (1975), 422 U.S. 590, 603-04, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2261-62.) The court concluded:

"[T]he State failed to sustain the burden of showing that the evidence in question was admissible under Wong Sun.

Brown's first statement was separated from his illegal arrest by less than two hours, and there was no intervening event of significance whatsoever. In its essentials, his situation is remarkably like that of James Wah Toy in Wong Sun. We could hold Brown's first statement admissible only if we overrule Wong Sun. We decline to do so. And the second statement was clearly the result and the fruit of the first." 422 U.S. 540, 604-05, 45 L. Ed. 2d 416, 427-28, 95 S. Ct. 2254, 2262.

In the case at bar, it is significant to note that the temporal proximity of James' arrest and confessions is practically identical to the temporal proximity in *Brown*. In its brief before this court, the State acknowledged that only "approximately one-half hour separated defendant's arrest and the first statement, and the next two statements were made two hours after defendants' arrest." The State contends, however, that temporal proximity "is the least determinative factor involved in determining whether there is a causal connection between an arrest and a subsequent statement." Whether it is or is not the least determinative factor, the temporal proximity in this case is practically identical to the temporal proximity in *Brown*. In each case the temporal proximity was inadequate to remove the taint of the illegal arrest from the defendant's confession.

The State additionally argues that there were intervening circumstances which established that James' confession was not obtained by exploitation of his illegal arrest.[3] The State contends that the intervening factors which purged James' confession from the taint of his illegal arrest were the arresting officers' statements to James that James was lying when he denied any involvement in the homicide and rape and that Meeks' confession implicated James in the commission of the offenses.

These purported intervening factors are exceedingly less persuasive than were the intervening factors in *Brown*. In *Brown*, after the officers gave Brown *Miranda* warnings, they told him that they knew that he had fired a shot from a revolver into the ceiling of a poolroom when he became angry for having been cheated in a dice game and that a bullet had been obtained from the poolroom ceiling and was taken to the crime laboratory to be compared with the bullets taken from the body of the murdered victim. To each of these statements Brown responded, "Oh you know about that." Brown then admitted his involvement in the murder in a typed, 20- to 25-minute question and answer statement. (*Brown v. Illinois* (1975), 422 U.S. 590, 594, 45 L. Ed. 2d 416, 421-22, 95 S. Ct. 2254, 2257.) Rejecting the arresting officers' comments to Brown as well as Brown's responses thereto as intervening factors which purged Brown's confession of the taint of his illegal arrest, the Supreme Court stated, "Brown's first statement was separated from his illegal arrest by less than two hours, and *there was no intervening event of significance whatsoever*." (Emphasis added.) (422 U.S. 590, 604, 45 L. Ed. 2d 416, 428, 95 S. Ct. 2254, 2262.) Likewise, in the case at bar, there were no intervening events of any significance whatsoever to purge the taint of James' illegal arrest.

Also in *Brown*, Brown's confession implicated Jimmy Claggett as a participant in the murder. The officers and Brown toured several places over an extended period of time looking for Claggett. After several hours they found Claggett and arrested him. Later, at the police station and after again receiving *Miranda* warnings, Brown made a second court-reported, typed confession. The Supreme Court held that none of these factors attenuated Brown's second confession and stated, "The fact that Brown had made one statement, believed by him to be admissible, and his cooperation with the arresting and interrogating officers in the search for Claggett, with his anticipation of

[3]We again note that the trial court ruled that James' arrest was legal and that his confession was not invalid by reason of an illegal arrest of him.

leniency, bolstered the pressures for him to give the second, or at least vitiated any incentive on his part to avoid self-incrimination." *Brown v. Illinois* (1975), 422 U.S. 590, 605 n.12, 45 L. Ed. 2d 416, 428 n.12, 95 S. Ct. 2254, 2262 n.12.

In *Taylor v. Alabama* (1982), 457 U.S. 687, 73 L. Ed. 2d 314, 102 S. Ct. 2664, the Supreme Court again reiterated and reapplied the principles enunciated in *Wong Sun* and *Brown* on the inadmissibility of confessions obtained following an illegal arrest. In *Taylor* police officers, without a warrant or probable cause, arrested Omar Taylor for the robbery of a grocery store. While in custody, Taylor signed a waiver-of-*Miranda*-rights form and thereafter gave a written confession. At his trial Taylor objected to the admission of his confession into evidence. He argued that his confession should have been suppressed because it was the fruit of his illegal arrest. The trial court overruled Taylor's objection, and he was subsequently convicted. The Supreme Court reversed and held that Taylor's confession was the fruit of his illegal arrest and should have been suppressed. The court rejected the State's argument that intervening events following Taylor's arrest severed his confession from his illegal arrest.

The State argued in *Taylor* that the six-hour period between Taylor's illegal arrest and his confession was significantly longer than the period of time in *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, and that therefore there was sufficient attenuation to purge the confession of the taint of the illegal arrest. The court responded, "[A] difference of a few hours is not significant where, as here, petitioner was in police custody, unrepresented by counsel, and he was questioned on several occasions ***." (*Taylor v. Alabama* (1982), 457 U.S. 687, 691, 73 L. Ed. 2d 314, 320, 102 S. Ct. 2664, 2667.) The State further argued that because the defendant was given *Miranda* warnings on three different occasions, there was attenuation. The court responded that the number of times Taylor was given *Miranda* warnings and the State's reliance thereon was misplaced. Additionally, the court rejected the State's contention that Taylor's visit with his girlfriend and a male companion before he confessed broke the connection between the illegal arrest and the confession. 457 U.S. 687, 691, 73 L. Ed. 2d 314, 320, 102 S. Ct. 2664, 2667.

Addressing the question of the admissibility of a custodial confession following an illegal arrest, in a recent decision, *People v. Thomas* (1984), 123 Ill. App. 3d 857, 863, 463 N.E.2d 832, we stated:

> "When a confession is obtained from a defendant through custodial interrogation after an illegal arrest that confession must be suppressed unless the State can meet its burden of es-

tablishing that intervening events have`broken the causal connection between the illegal arrest and the confession so as to render the confession an act of free will. (*Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254; *Taylor v. Alabama* (1982), 457 U.S. 687, 73 L. Ed. 2d 314, 102 S. Ct. 2664.) In *Brown* the court identified a number of factors to be considered in making this evaluation. The fact that *Miranda* warnings have been given and understood, thus establishing voluntariness for purposes of the fifth amendment, is only a threshold requirement to be met by the State in establishing attenuation of the taint of the initial illegality. Other factors to be considered are the temporal proximity of the arrest and the confession, the presence of intervening circumstances such as an appearance by the defendant before a magistrate (a factor found to attenuate the taint in *Johnson v. Louisiana* (1972), 406 U.S. 356, 32 L. Ed. 2d 152, 92 S. Ct. 1620, a case cited by *Brown* as illustrating this factor), and the purpose and flagrancy of the officers' conduct in making the arrest."

As we have shown in the instant case, the principles enunciated in *People v. Thomas* (1984), 123 Ill. App. 3d 857, 463 N.E.2d 832, *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407, *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 96 S. Ct. 2254, and *Taylor v. Alabama* (1982), 457 U.S. 687, 73 L. Ed. 2d 314, 102 S. Ct. 2664, demand that James' confessions should have been suppressed because they were the fruit of his illegal arrest. (See *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248.) We conclude that neither the intervening events nor the temporal proximity of James' arrest and his confessions attenuated his confessions from the taint of his illegal arrest. In view of our holding that James' confessions were inadmissible, we need not address the next issue, *i.e.*, the purpose and alleged flagrancy of the officers' misconduct.

Defendant further argues for reversal that he was denied a fair trial because the court's comments to the jury were calculated to affect the verdict by discouraging findings on only some of the counts. The facts on which this contention is premised are as follows.

The jury returned verdicts finding James guilty of murder, robbery, and rape. During the polling of the jury, the following colloquy occurred:

"THE COURT: Miss Frigan, were these and are these your verdicts?

JUROR FRIGAN: They cannot be separated? All three ac-

counts [*sic*] have to be together? Those are—

THE COURT: Well, Miss Frigan, were these your verdicts and are these your verdicts now?

JUROR FRIGAN: If rape and murder is regarded the same thing under the law, this is my verdict.

THE COURT: Well, the instructions that you have been given define both the offenses of rape, murder and robbery. Now, if these are not your verdicts or were not your verdicts, I would ask the jury to retire and continue your deliberations.

THE CLERK: Joanne—

THE COURT: One moment. I'm not sure that we have a verdict at this point. Miss Frigan, are you indicating this is not presently your verdict?

JUROR FRIGAN: No. I would just like an answer to my question. Could I have that?

THE COURT: Are you unsure of your verdict at this point.

JUROR FRIGAN: I'm unsure of the law.

THE COURT: I cannot discuss the law with you. The law is contained in the instructions. If you have a specific question regarding the law or the meaning of instructions, I will hear the question in writing from you or from the jurors. Now, do you wish to retire and continue your deliberations? Miss Frigan?

JUROR FRIGAN: I would like to have this question answered.

THE COURT: Are you indicating now that this is not your verdict at the present time?

JUROR FRIGAN: Yes.

THE COURT: All right. I'll ask the jury to retire and continue their deliberations. Should there be any questions, I would ask that you compose them in writing and I will respond to the questions in writing. Please retire and continue your deliberations."

The jury retired and further deliberated, during which they submitted the following question to the court in writing:

"If the defendant robbed and raped the victim, is he also guilty of her murder when the law is applied to this case[?] Thanks."

The trial court did not answer the inquiry. Instead it read to the lawyers the instruction it intended to give the jury should they fail to return verdicts by a designated hour. Before that designated hour, however, the jury indicated that it had reached its verdict. They were brought into court and their verdicts were read. The defendant was

*found guilty of murder, rape and robbery.*

We decline to rule on this issue as well because we reverse the defendant's convictions on other grounds and remand for a new trial, and it is unlikely that these inquiries from the jury will recur on retrial. Because the judgment and sentence are reversed, we also decline to rule on the defendant's 50-year extended-term-imprisonment sentence, which the defendant contends is excessive.

The judgment of the trial court is reversed and the cause is remanded for a new trial.

Reversed and remanded.

SULLIVAN, P.J., concurs.

JUSTICE MURRAY, dissenting:

The decision of the United States Supreme Court in *United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, compels me to dissent. In *Leon* a search warrant was ultimately found to be invalid because the affidavit in support of its issuance was insufficient to establish probable cause. In finding that the involved officers acted in objectively reasonable reliance on the search warrant which had been issued by a neutral and detached magistrate, the court created a "good faith" exception to the exclusionary rule, holding that the rule should not be applied to bar evidence obtained as a result of the invalid warrant under these circumstances. In reaching this determination the court reasoned that "in the Fourth Amendment context, *the exclusionary rule can be modified* somewhat without jeopardizing its ability to perform its intended functions." (Emphasis added.) (468 U.S. 897, 905, 82 L. Ed. 2d 677, 687, 104 S. Ct. 3405, 3412.) The court further stated that although the exclusionary rule was designed to deter police misconduct in searches and seizures in violation of the fourth amendment, it never was intended to confer a benefit on all guilty defendants and,

> "[p]articularly when law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system." 468 U.S. 897, 907-08, 82 L. Ed. 2d 677, 688-89, 104 S. Ct. 3405, 3413.

In the instant case, had the involved officers secured a warrant for the arrest of Meeks from a detached and neutral judge and they objectively reasonably relied on it in arresting Meeks, the arrest of James and use of his confession would without doubt have been con-

stitutionally permissible even if the Meeks warrant were later found to be invalid. In light of the foregoing, I am therefore of the opinion that the *Leon* good-faith exception should be applied to cases where, as here, a warrantless arrest is made in good faith based upon evidence obtained as a result of the prior arrest of another party which is later found to be illegal. To make the imprimatur of a judicially issued warrant, most often issued *ex parte*, a factor in determining whether the good-faith exception to the exclusionary rule applies is putting form over substance.

Here the record discloses that the original warrantless arrest of Meeks was in good faith, even though suppressible because probable cause emerged only after his confession. However, the subsequent arrest of James was not only then based on probable cause, *i.e.*, Meeks' implication of him in the crime, but also made in good faith. Notwithstanding the absence of a warrant, therefore, the arrest of James meets the *Leon* good-faith test and James' subsequent voluntary confession, made after being given *Miranda* warnings, was evidence untainted by the "forbidden fruit" involved in the original Meeks' arrest.

James also raised issues not addressed by the majority. Since they were not, I do not feel it appropriate to comment upon them.