THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JOHN W. POTTER, Defendant-Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MARK VINEGAR, Defendant-Appellee.

Third District   Nos. 3—84—0786 through 3—84—0789 cons.

Opinion filed January 9, 1986.

Neil F. Hartigan, Attorney General, of Springfield (Mark L. Rotert, Scott Graham, and Jill Wine-Banks, Assistant Attorneys General, of Chicago, of counsel), for the People.

Matthew Maloney, of Pierson, Maloney & Rayfield, of Princeton, for appellees.

PRESIDING JUSTICE HEIPLE delivered the opinion of the court:

Defendants John Potter and Mark Vinegar are used car dealers in Princeton. In August 1983, the Bureau County State's Attorney referred Deputy Sheriff Greg Johnson to an informant who allegedly had information concerning illegal activities by Potter. The informant gave Johnson the names of people whom he was convinced had purchased cars from Potter which had their odometers turned back or "spun." He could not say when the alterations were accomplished or by whom. He further speculated that Potter had a stolen car or cars for sale on his lot and some stolen parts as well.

On August 5, State's Attorney May conferred with Johnson. He informed Johnson that there was insufficient evidence to obtain a search warrant for J & J Auto Sales, Potter's dealership. However, he thought that section 5—403 of the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 5—403) provided authority for a valid warrantless search in the form of a records check.

On August 8, Johnson and Deputy Larry Floyd went to J & J Auto Sales to conduct a records check. Potter was not present. Agnes Halm, an employee of Potter, was present in the back room where Johnson and Floyd conducted their inspection of the records. The search continued for five days. Some records were seized and receipts were given therefor. The records apparently evidenced the spinning of odometers in a number of instances. However, the officers uncovered no evidence of the possession of stolen cars or parts.

Also appearing in the records was the signature of Mark Vinegar on some documents indicating his participation in the buying and selling of cars with altered odometers. A two-day records check at Vinegar's place of business on August 15 and 16 yielded documents incriminating Vinegar as well.

Potter and Vinegar were charged in separate indictments with felony and misdemeanor theft by deception, the gravamen of the offense being that cars were sold with the odometers turned back. Both filed motions to suppress the evidence seized during the aforementioned inspections. The trial court granted the motions based on both the unconstitutionality of the warrantless searches and the violation of the statute which purportedly authorized the searches. We affirm. Because, however, the statute itself provides ample grounds for upholding the judgment of the trial court, it is unnecessary to address the constitutional issues presented.

In a thorough memorandum in support of his order, the trial judge rejected the argument that the search in question was valid without a warrant under the administrative search doctrine. He concluded that this was not an administrative search at all, but rather an investigation to discover specific evidence of a specific series of offenses. A warrantless administrative search is appropriate where:

> "*** Congress (in this case, the state legislature) has reasonably determined that warrantless searches are necessary to further a regulatory scheme and the *** regulatory presence is sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes." *Donovan v. Dewey* (1981), 452 U.S. 594, 600, 69 L. Ed. 2d 262, 270, 101 S. Ct. 2534, 2539.

In support of his characterization, the trial judge noted that, prior to the searches in question and thereafter, there has never been another records check of a Bureau County automobile dealership. He thus concluded that the reliance by the State on the statute to justify the search was misplaced. The court relied on the absence of other

records checks as evidence that the search in question was not a routine regulatory inspection. This is probably true, but inherently controversial. Obviously, the State has to start somewhere in carrying out statutorily authorized inspections. Moreover, the court focused on the specific nature of the inquiry to negate the State's contention that this was a regulatory inspection. Although we do not challenge this finding, it cannot be the case that those authorized to conduct administrative searches must seek a warrant whenever they receive information that a regulated business is involved in criminal activity.

Section 5—403 of the Illinois Vehicle Code provides in relevant part:

> "(1) Authorized representatives of the Secretary of State including officers of the Secretary of State's Department of Police, other peace officers, and such other individuals as the Secretary may designate from time to time shall make inspections of individuals and facilities licensed under Chapter 5 of the Illinois Vehicle Code for the purpose of reviewing records required to be maintained under Chapter 5 for accuracy and completeness and reviewing and examining the premises of the licensee's established place of business for the purpose of determining the accuracy of the required records. Premises that may be inspected in order to determine the accuracy of the books and records required to be kept includes all premises used by the licensee to store vehicles and parts that are reflected by the required books and records.
>
> * * *
>
> (5) Any inspection conducted pursuant to Chapter 5 shall not continue for more than 24 hours after initiation.
>
> (6) In the event information comes to the attention of the individuals conducting an inspection that may give rise to the necessity of obtaining a search warrant, and in the event steps are initiated for the procurement of a search warrant, the individuals conducting such inspection may take all necessary steps to secure the premises under inspection until the warrant application is acted upon by a judicial officer.
>
> (7) No more than 6 inspections of a premises may be conducted pursuant to Chapter 5 within any 6 month period except pursuant to a search warrant. Notwithstanding this limitation, nothing in this subparagraph shall be construed to limit the authority of law enforcement agents to respond to public complaints of violation of the Code. For the purposes of this subparagraph, a public complaint is one in which the complainant

identifies himself or herself and sets forth, in writing, the specific basis for their complaint against the licensee.

(8) Nothing in this Section shall be construed to limit the authority of individuals by the Secretary pursuant to this Section to conduct searches of licensees pursuant to a duly issued and authorized search warrant."

Also relevant here is section 5—401(e) of this Code:

"(e) Every record required to be maintained under this Section shall be opened to inspection by the Secretary of State or his authorized representative or any peace officer for inspection at any reasonable time during the night or day. Such inspection may include examination of the premises of the licensee's established place of business for the purpose of determining the accuracy of required records."

Even the most charitable reading of these statutes cannot validate the searches in question. The State immediately runs afoul of the statute when the "Findings and Purpose" section of the recordkeeping statute is considered. (Ill. Rev. Stat. 1983, ch. 95½, par. 5—100—1.) The aforesaid section makes it clear that it was the intention of the legislature to allow warrantless searches of dealers to combat the trade in stolen vehicles and parts. The record in the instant case suggests, however, that the searches had little or nothing to do with these ends. In the case of Potter, the unidentified informant had a minimally articulated suspicion concerning altered odometers. His "feeling" that there were stolen cars or parts on the lot was pure speculation. In fact, the testimony of Johnson and Floyd indicates that only cursory attention was paid to the matter of stolen cars and parts. In the case of Vinegar, his only involvement stemmed from the possibility of altered odometers. The statute is at best only tangentially concerned with altered odometers.

What truly concludes the matter, however, is section 5—403 itself. Subsection (5) explicitly limits inspections to a period of 24 hours. As to Potter, this provision was ruthlessly violated. Subsection (6) provides that if an inspection turns up information which "may give rise to the necessity of a search warrant" (i.e., evidence of criminal activity), the officers may take steps to secure the premises pending the issuance of a warrant. Subsection (8) provides that "nothing in this Section shall be construed to limit the authority of individuals *** to conduct searches of licensees pursuant to a duly issued and authorized search warrant." Reading subsections (5), (6) and (8) together, the statutory import is clear: if within 24 hours information is uncovered which might give an officer probable cause to believe an offense has

been committed, a search warrant should be obtained before any further searching or seizing is attempted. This was totally disregarded in the search of J & J Auto Sales. The search went well beyond 24 hours and long after evidence of criminal activity had been uncovered. As to Vinegar, not only did the search exceed 24 hours, but any evidence linking him to altered odometers must be considered under the circumstances as "fruit of the poisonous tree."

■ The State responds that even if the statute were violated, an exclusionary rule should not apply. It is argued that section 5—801, which calls for criminal penalties if a person violates "any of the provisions of this Chapter" (Ill. Rev. Stat. 1983, ch. 95½, par. 5—801), as a sufficient deterrent against officials violating the inspection procedures. We do not agree. Section 5—801 became effective as amended in 1973, long before the inspection procedures of section 5—403 came into being. Section 5—801 is directed against licensees and their employees who violate the provisions of the Code and not against law enforcement officers. An exclusionary rule appears to be the only meaningful remedy against an illegal records inspection.

■ Finally, the State argues for a good-faith exception to the exclusionary rule (*United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405). Such an exception applies only to good-faith violations of the fourth amendment resulting from searches conducted pursuant to technically invalid warrants. The exception is clearly inapplicable since the exclusionary rule applied here is not based on the fourth amendment and there was no warrant issued.

Accordingly, the judgment of the circuit court of Bureau County is affirmed.

Affirmed.

BARRY and SCOTT, JJ., concur.