(No. 64584 )

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. LOWELL MADISON, Appellee.

*Opinion filed February 11, 1988.—Rehearing denied April 5, 1988.*

Neil F. Hartigan, Attorney General, of Springfield, and Tony Brasel, State's Attorney, of Watseka (Kenneth R. Boyle, John X. Breslin and Gary F. Gnidovec, of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Ronald E. Boyer, of Watseka, for appellee.

JUSTICE SIMON delivered the opinion of the court:

On May 17, 1984, defendant was charged with 26 counts of possession of a motor vehicle certificate of title with incomplete assignment, in violation of section 4—104 of the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 4—104). At trial, the circuit court of Iroquois County granted defendant's motion to suppress evidence of the incomplete titles because the evidence resulted from an illegal search and seizure, and subsequently dismissed the case. The appellate court for the third district affirmed. (149 Ill. App. 3d 592.) We allowed the State's appeal pursuant to Supreme Court Rule 315(a) (107 Ill. 2d 315(a)).

Defendant was the owner and operator of Madison Salvage Yard in Iroquois County. Defendant's neighbors complained about the yard to the State's Attorney, who in turn alerted the Secretary of State's office. The complaints concerned the condition of the premises. Following this notice, two Secretary of State police officers went without a search warrant to defendant's salvage yard to conduct an inspection. The officers inventoried the vehicles in the yard and reviewed defendant's business records, whereupon they discovered 26 vehicle certificates of title with incomplete assignments of title. Defendant was given a receipt for the 26 titles, and the officers took them into their possession. Although defendant cooperated with the officers and did not object to the inspection, he did not give the officers permission to seize the 26 titles.

Licensed salvage yards are regulated under chapter 5 of the Illinois Vehicle Code. Article IV of chapter 5, entitled "Records Required to be Kept" (Ill. Rev. Stat. 1983, ch. 95½, pars. 5—401 through 5—404), specifies the business records yards must keep, details the State's right to inspect these records, and outlines the possible consequences for failure to keep required records. Section 5—403 permits authorized representatives of the Secretary of State, including police officers, to perform inspections of the records and premises of salvage yards for the purpose of determining the accuracy and completeness of the required records. No warrant is required to initiate or conduct these inspections, but subsection (6) provides that:

> "In the event information comes to the attention of the individuals conducting an inspection that may give rise to the necessity of obtaining a search warrant, and in the event steps are initiated for the procurement of a search warrant, the individuals conducting such inspection may take all necessary steps to secure the premises

under inspection until the warrant application is acted upon by a judicial officer." Ill. Rev. Stat. 1983, ch. 95½, par. 5—403(6).

The issue presented by this case is whether, when police officers have discovered evidence of a crime during the course of a lawful administrative inspection conducted pursuant to section 5—403 of the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 5—403), the officers must obtain a warrant before seizing the evidence. The State argues that the trial and appellate courts erroneously interpreted the warrant requirement of section 5—403, and therefore the evidence seized by the officers in this case should not have been suppressed. The State contends that officers should not be required to obtain a warrant before seizing evidence of criminal violations uncovered during an administrative inspection.

There has been no question raised as to the constitutionality of the statutory scheme authorizing the inspections, or to the specific requirements and restrictions imposed therein on administrative inspections. Thus, our decision in this case does not turn on any fourth amendment analysis, but only upon an interpretation of our State statute.

Under the regulatory scheme created by the legislature in section 5—401 et seq., the Secretary of State police officers were authorized to conduct a warrantless inspection of defendant's salvage yard for the limited purpose of checking the accuracy and completeness of defendant's records. To determine whether the officers were entitled to seize evidence discovered during the inspection, however, we must turn to the language of the statute. The cardinal rule of statutory construction is that courts "must ascertain and give effect to the legislature's intention in enacting the statute. In doing so courts must give the language of the statute its plain and ordinary meaning. *** ' "This is to be done primar-

ily from a consideration of the legislative language itself, which affords the best means of its exposition." ' " *Maloney v. Bower* (1986), 113 Ill. 2d 473, 479, quoting *Franzese v. Trinko* (1977), 66 Ill. 2d 136, 139; *Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350.

The language of section 5—403(6) is not so vague as to preclude understanding of and adherence to its plain meaning. Nothing in the statute permits seizure of records or other evidence uncovered as a result of an inspection. As we read it, the plain language of the statute contemplates that officers obtain a warrant before seizing any evidence discovered during the course of an inspection. Any information uncovered that could serve as the basis for criminal prosecution makes obtaining a warrant necessary because gathering evidence for criminal prosecutions is outside the narrow scope of authority—to check the accuracy and completeness of records—given the State to conduct administrative inspections. It is a fundamental premise of both State and Federal law that in the absence of exigent circumstances or some other exception to the warrant requirement, no evidence to be used in a criminal prosecution may be sought or seized without a lawful warrant. (*Frank v. Maryland* (1959), 359 U.S. 360, 365, 3 L. Ed. 2d 877, 881, 79 S. Ct. 804, 808 ("evidence of criminal action may not *** be seized without a judicially issued search warrant").) Therefore, any evidence seized by police officers without a warrant during an administrative inspection under section 5—403 is evidence seized outside the officers' limited authority under the statute and must be excluded. Thus, we agree with our appellate court that "when the officers discovered the certificates with incomplete assignments, they should have obtained a search warrant before attempting to seize them. This they failed to do, thereby rendering the seizure of the certificates unlaw-

ful." 149 Ill. App. 3d 592, 596; see also *People v. Potter* (1986), 140 Ill. App. 3d 693, 697-98 ("[I]f within 24 hours information is uncovered [in an administrative inspection] which might give an officer probable cause to believe an offense has been committed, a search warrant should be obtained before any further searching or seizing is attempted").

The State argues that requiring a police officer to obtain a warrant to seize evidence where the evidence has already been uncovered in the course of a valid administrative search would be "superfluous" because under these circumstances the warrant requirement serves no useful purpose. The State concludes that the legislature could not possibly have intended to require a warrant for seizure of evidence in such cases.

What the State essentially seeks is an interpretation of the statute that in effect reads out the language requiring a warrant after discovery of criminal evidence. We cannot endorse such an interpretation, however, as the legislature's inclusion of that language must be deemed to be intentional, and we will not interpret a statute to render meaningless its clear language. " ' "There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports." ' " (*County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 151-52, quoting *People ex rel. Scott v. Schwulst Building Center, Inc.* (1982), 89 Ill. 2d 365, 371.) If there were no statutory language requiring a warrant, this would be a different case and we might find the search and seizure conducted here unobjectionable under current fourth amendment doctrine. (See *Michigan v. Clifford* (1984), 464 U.S. 287, 294, 78 L. Ed. 2d 477, 484, 104 S. Ct. 641, 647 ("If evidence of criminal activity is discovered during the course of a valid administrative search, it may be seized"); *Texas v.*

*Brown* (1983), 460 U.S. 730, 739, 75 L. Ed. 2d 502, 512, 103 S. Ct. 1535, 1542 ("[I]f, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately").) But where, as here, a State statute imposes additional restrictions on the manner in which warrantless searches are to be conducted, we cannot ignore the language of the statute or interpret it in such a way as to render the restrictions meaningless.

Although the plain language of the statute compels our decision in this case, and therefore we need not turn to the legislative history of the statute for guidance, we note that the legislative history proffered by the State in support of their argument does not demonstrate a legislative intent to permit seizures in the course of administrative inspections. In fact, in explaining the bill to members of the Senate, Senator Chew stated that:

> "This is a bill that was designed by the Motor Vehicle Laws, and it deals with auto theft and chopshops plus parts. And it merely allows the Secretary of State or his nominee to make unannounced inspections to ascertain whether any parts on the premises were stolen or do not have ... the proper \*\*\* number on them *and that's all it does.*" (Emphasis added.) 82d Ill. Gen. Assem., Senate Proceedings, May 20, 1982, at 41.

In response to questions, Senator Chew made clear that the inspection authorized by the statute "is not a search, it's just an inspection to ascertain the kind of parts that are on the premises." (82d Ill. Gen. Assem., Senate Proceedings, May 20, 1982, at 42.) Further, he stressed that:

> "I don't want the word search to overcast the inspection. It isn't necessary to have a search warrant to inspect. If you were there to search the place, in the sense of searching, it's necessary to have a warrant, so any time a search is to be had, the judge would have to issue ... a search warrant \*\*\* and what we're trying to do is to

give the Secretary of State's Office the authority to go in and inspect, not search but inspect, their records to ascertain whether there are stolen auto parts on the premises. Now the legal proceedings subsequently to the fine or not to fine would be followed according to law *** it is an inspection and not a search." (82d Ill. Gen. Assem., Senate Proceedings, May 20, 1982, at 43-44.)

This legislative history illustrates the legislature's intention that the purpose of inspection be narrowly limited to checking records, and not to include the general authority—including the authority to seize evidence—given to police in conducting searches. It also makes clear that judicial approval would be necessary to expand an inspection conducted pursuant to the statute beyond its narrowly drawn purposes.

Furthermore, contrary to the State's assertions that the warrant requirement is meaningless in this context, we find that it serves a useful purpose. As originally enacted, the statute authorizing warrantless administrative inspections contained no guidelines concerning how the inspections were to be conducted and no limits on the discretion of the State in making inspections. Both this court and the Federal district court held the statute unconstitutional under the standards established in *Donovan v. Dewey* (1981), 452 U.S. 594, 69 L. Ed. 2d 262, 101 S. Ct. 2534. (*People v. Krull* (1985), 107 Ill. 2d 107, 116, *rev'd on other grounds* (1987), 480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160; *Bionic Auto Parts & Sales, Inc. v. Fahner* (N.D. Ill. 1981), 518 F. Supp. 582, *aff'd in part & vacated in part* (1983), 721 F.2d 1072.) The statute was then amended to include safeguards designed to limit State officials' discretion by restricting the manner in which warrantless inspections could be conducted. The State concedes that the current statute is strictly limited . and that the requirements of section 5—403(6) are safeguards for conducting warrantless inspections. The con-

stitutionality of the statute as amended has been upheld. (*Bionic Auto Parts & Sales, Inc. v. Fahner* (7th Cir. 1983), 721 F.2d 1072.) Given this background, we do not find it inconceivable that the legislature enacted section 5—403(6) to serve a useful function: to protect against the possible abuses of administrative searches by requiring that the neutral judgment of a magistrate or judge be obtained before allowing State officers to seize evidence of criminal activity uncovered during inspections.

Neither can we accept the State's contention that the appellate court's decision in *People v. Potter* (1986), 140 Ill. App. 3d 693, authorizes unlimited warrantless search and seizure under the statute for the first 24 hours of an administrative inspection. *Potter* simply requires that if an inspection has gone on for 24 hours, the State must then obtain a warrant before any further search is authorized. The fact that a warrant is required under these circumstances does not, however, carry the negative implication that through the first 24 hours of an inspection the State has *carte blanche* to search and seize as it wishes. As we read it, the statute requires a warrant whenever evidence of a criminal violation is uncovered, prior to seizure of that evidence.

The State also argues that the statute's requirement of a warrant serves no fourth amendment purpose. Although we decide this case on purely statutory grounds, we note that the primary purpose of the exclusionary rule is " 'to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures.' " (*Illinois v. Krull* (1987), 480 U.S. 340, 347, 94 L. Ed. 2d 364, 373, 107 S. Ct. 1160, 1165, quoting *United States v. Calandra* (1974), 414 U.S. 338, 38 L. Ed. 2d 561, 94 S. Ct. 613.) In failing to obtain a warrant before seizing the certificates of title in this case, the police officers acted in defiance of a State statute. This is precisely the type

of situation in which application of the exclusionary rule works to deter future police misconduct and preserve the protections of the fourth amendment. Thus it is clear that the trial and appellate court decisions excluding the evidence furthered the purpose underlying the fourth amendment's exclusionary rule.

The State's reliance on an exigent-circumstances rationale for the warrantless search is also erroneous. Application of an exigent-circumstances exception to the warrant requirement will be made only where the situation, considering all the facts, necessitated immediate action by the police. The State has failed to bring any facts to our attention that indicate any exigent circumstances existing when the officers seized defendant's certificates of title, and we agree with the appellate court that there is no evidence that the officers had insufficient time to get a search warrant before the courthouse closed. The cases cited by the State in support of application of an exigent-circumstances exception, *Carroll v. United States* (1925), 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, and *Chambers v. Maroney* (1970), 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975, were both based on the differences between searches of automobiles and searches of homes or offices. As stated in *Chambers*, "the opportunity to search [a vehicle] is fleeting since a car is readily movable." (*Chambers*, 399 U.S. at 51, 26 L. Ed. 2d at 428, 90 S. Ct. at 1981.) Obviously, the rationale justifying search and seizure of vehicles in these cases cannot be construed to justify the seizure of evidence in the salvage yard in this case.

The State next argues that even if the evidence seized in this case is subject to exclusion, it should not be excluded due to the good-faith or plain-view exceptions to the exclusionary rule. The United States Supreme Court recognized a "good faith" exception to the exclusionary rule in *United States v. Leon* (1984), 468

U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, and expanded that exception in *Illinois v. Krull* (1987), 480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160. In *Leon*, the Court held that evidence seized on the authority of a search warrant later found to be invalid need not be excluded if the police officer's reliance on the warrant was objectively reasonable. The Court reasoned that to exclude evidence under these circumstances would not serve the basic purpose of the rule—deterring police misconduct—because at the time of the search and seizure the police officer was acting as a reasonable police officer should.

On the same rationale, the Court in *Krull* extended the good-faith exception to situations in which a police officer conducts a search and seizure under the authority of a statute later found to be unconstitutional:

> "Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law. If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written." *Krull*, 480 U.S. at 349-50, 94 L. Ed. 2d at 375, 107 S. Ct. at 1167.

Obviously, *Leon* and *Krull* are not controlling here, as the police officers in this case were relying neither on an invalid warrant nor on a statute later held to be unconstitutional. Instead, the State argues that we should extend the good-faith exception to situations where a police officer reasonably relies on his own interpretation of a valid statute in conducting a search and seizure, when that statute is later judicially interpreted to prohibit such seizure.

We reject the State's argument because under *Leon* and *Krull* the officer's good faith alone is not sufficient

to validate the search and seizure; the officer must also be acting on the authority of a seemingly valid warrant or statute. Here, there is no such reliance, but quite the opposite. The officers were acting in defiance of, not reliance on, the language of a statute limiting the authority of officers to inspection of the premises and a records check for accuracy and completeness.

Moreover, to adopt the extension of the good-faith exception proposed by the State would essentially eviscerate the exclusionary rule as it is currently enforced. Police officers would be encouraged to defy the plain language of statutes as written in favor of their own interpretations in conducting searches and seizures. Such a proposal, giving the police unlimited authority to conduct searches and seizures until specifically restricted by the legislature or the courts, is fundamentally at odds with the central purpose of deterring police misconduct which underlies the exclusionary rule.

The State's reliance on the plain-view doctrine is similarly misplaced. Under the doctrine, evidence seized by officers in the absence of a warrant is nevertheless admissible if three conditions are met. First, police must be properly on the premises through a warrant or an exception to the warrant requirement. Second, the police must discover the evidence inadvertently, not knowing in advance the location of the evidence. Finally, it must be immediately apparent that the item observed may be evidence of a crime, contraband, or otherwise subject to seizure. (*Coolidge v. New Hampshire* (1971), 403 U.S. 443, 464-71, 29 L. Ed. 2d 564, 582-86, 91 S. Ct. 2022, 2037-41 (plurality opinion); *People v. Wilson* (1987), 116 Ill. 2d 29, 51-52 (seizure valid where police lawfully on premises and items seized were in plain view); *People v. House* (1986), 141 Ill. App. 3d 298, 300-02 (three requirements of the plain-view doctrine outlined).) The State argues that we should extend the plain-view exception to

the circumstances of this case. This court has never applied the doctrine to facts even remotely similar to those in this case, and we see no reason to do so now.

We agree with the appellate court that a lengthy analysis under the plain-view doctrine is not necessary where, as here, the officers were searching for precisely the objects found. Certificates of title contained within defendant's records, although coming into the view of the officers during the course of the inspection, cannot be seriously considered as having been in "plain view," and discovery pursuant to a deliberate search of these records can hardly be deemed inadvertent. As the Supreme Court noted, "it is important to keep in mind that, in the vast majority of cases, *any* evidence seized by the police will be in plain view, at least at the moment of seizure." (Emphasis in original.) *Coolidge*, 403 U.S. at 465, 29 L. Ed. 2d at 582, 91 S. Ct. at 2037.

Finally, even if we were to find that under the language of section 5–403 a warrant was not necessary for seizure of the titles discovered during the inspection, under the facts of this case the evidence would still be excludable. One of the police officers who conducted the search testified that the inspection was in response to a complaint concerning the condition of defendant's premises. When asked, "[The complaint] had nothing to do with car titles, did it?" the officer responded, "No, Sir, it did not."

One of the fundamental principles of administrative searches is that the government may not use an administrative inspection scheme as a pretext to search for evidence of criminal violations. (See *Michigan v. Tyler* (1978), 436 U.S. 499, 56 L. Ed. 2d 486, 98 S. Ct. 1942; *Donovan v. Dewey* (1981), 452 U.S. 594, 69 L. Ed. 2d 262, 101 S. Ct. 2534; *Almeida-Sanchez v. United States* (1973), 413 U.S. 266, 37 L. Ed. 2d 596, 93 S. Ct. 2535; *Abel v. United States* (1960), 362 U.S. 217, 4 L. Ed. 2d

668, 80 S. Ct. 683.) Thus, if "the primary object of the search is to gather evidence of criminal activity" a search warrant based on probable cause must be obtained. (*Michigan v. Clifford* (1984), 464 U.S. 287, 294, 78 L. Ed. 2d 477, 484, 104 S. Ct. 641, 647.) Here, the search was initiated not for the purpose of inspecting the records, as authorized by the statute, but in response to complaints about the condition of the premises. The clear implication is that the police were conducting the inspection as a pretext for placating defendant's neighbors or in order to find criminal violations.

In *People v. Potter* (1986), 140 Ill. App. 3d 693, our appellate court faced a similar situation. There, the State's Attorney had received information that defendants (used-car dealers) had sold cars with their odometers turned back. Because there was insufficient evidence to obtain a search warrant for defendant's dealership, the State's Attorney instead conducted a warrantless administrative search under section 5—403. Evidence of altered odometers was uncovered, and defendants were indicted. The appellate court affirmed the trial court's suppression of evidence discovered in the inspection. By comparing the purpose of the statute—to combat the trade in stolen vehicles and parts—with the purpose underlying the search conducted of the dealership, the court concluded that the inspection was merely pretextual and that even "the most charitable reading of these statutes cannot validate the searches in question." 140 Ill. App. 3d at 697.

Similarly, the administrative inspection in the present case was not implemented in order to further the purposes of the statute, but merely in response to neighbors' complaints unrelated to the purpose of the statute. Evidence obtained as the result of such an abuse of the authority to inspect given by the statute and without the

·warrant contemplated by the statute is clearly inadmissible against defendant.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*