THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
BOB R. WINEMILLER, Defendant-Appellee.
Third District    No. 3—88—0130

Opinion filed February 28, 1989.

Edward F. Masters, State's Attorney, of Joliet (Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Thomas A. Lilien, of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE WOMBACHER delivered the opinion of the court:

The trial court granted defendant Bob R. Winemiller's motion to suppress the evidence against him. The State appeals.

The record shows that in May of 1986, Will County sheriff's deputy Thomas Tichy went to the defendant's premises to buy a transmission. While there, he noticed that one of the cars did not have a vehicle identification number (VIN) plate. He subsequently reported this to his supervisor. Acting on this information, two peace officers drove by the defendant's premises and observed several vehicles in various stages of dismantlement. Sergeant Albert Pace of the Secretary of State's police then ran the defendant's name through a computer and found that no license had been issued for him to conduct an auto parts recycling business.

On May 21, 1986, seven police officers went to the defendant's premises. They had no search warrant, instead relying on section 5–403 of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95, par. 5–403) as authority for their search. Geraldine and John Rutherford greeted the officers, who introduced themselves and stated the nature of their visit. John told the officers that he worked with the defendant in the auto parts business. Geraldine stated that she lived in the house on the premises.

According to Sergeant Pace, both Rutherfords consented to the officers' searching the premises. Pace further testified that the defendant arrived about 15 minutes later. After learning why the police were there, the defendant supplied some of the titles which the Rutherfords had been unable to locate for the police. The search revealed vehicles missing VIN plates, vehicle titles which had not been

properly assigned, and a fabricated VIN plate. In addition to seizing 10 of the incomplete titles, the police photographed the cars and parts missing VIN plates, photographed the entire area, and took one of the defendant's business cards.

Both of the Rutherfords testified that they had not consented to the search. John denied bringing the police any of the titles. Geraldine admitted bringing them some titles, but stated that she did so because she felt she had no choice. She noted that when she asked an officer whether he had a search warrant, the officer displayed his badge and stated: "This is, you know, this is all I need."

The defendant testified that when he arrived two officers explained that they had to check everything and asked if they could look around. The defendant responded: "Looks to me like you're already looking around." He obtained the titles for the officers because he did not believe anything was wrong and because he believed that they could obtain a search warrant if necessary.

The defendant was subsequently charged with five counts of possessing a vehicle with a removed VIN plate, one count of failure to maintain records, and five counts of unlawful possession of a title without a complete assignment. Following a hearing, the trial court granted the defendant's motion to suppress the evidence seized in the warrantless search of his premises.

On appeal, the State argues that the trial court erred in granting the defendant's motion to suppress.

■ Salvage yards are regulated under chapter 5 of the Illinois Vehicle Code (the Code) (Ill. Rev. Stat. 1987, ch. 95½, par. 1—100 *et seq.*). Section 5—403 of the Code (Ill. Rev. Stat. 1987, ch. 95½, par. 5—403) permits authorized representatives of the Secretary of State, including police officers, to conduct warrantless inspections of the records salvage yards are required to keep. In *People v. Madison* (1988), 121 Ill. 2d 195, 520 N.E.2d 374, the Illinois Supreme Court held that section 5—403(6) of the Code (Ill. Rev. Stat. 1987, ch. 95½, par. 5—403(6)) required the police to obtain a search warrant before seizing any evidence discovered during the course of an inspection. The court noted that any information uncovered that could serve as the basis for criminal prosecution necessitated obtaining a warrant, because gathering evidence for criminal prosecutions is outside the narrow scope of authority given to the State to conduct administrative inspections. *Madison*, 121 Ill. 2d at 201, 520 N.E.2d at 377.

■ ■ In the instant case, the State's actions were more egregious than those in *Madison*. Here, the searching officers knew from information supplied by Deputy Tichy that the defendant was commit-

ting a crime by possessing a vehicle with a missing VIN plate. As the trial court noted, the subsequent administrative inspection was merely a police subterfuge for entering the defendant's premises with the expectation that they would find evidence of illegal activities. It was not simply to inspect the defendant's business records. One of the fundamental principles of administrative searches is that the government may not use an administrative inspection scheme as a pretext to search for evidence of criminal violations. (*Madison*, 121 Ill. 2d at 209, 520 N.E.2d at 381.) If the primary objective of a search is to gather evidence of criminal activity, a search warrant based on probable cause must be obtained. (*Michigan v. Clifford* (1984), 464 U.S. 287, 78 L. Ed. 2d 477, 104 S. Ct. 641.) Accordingly, the trial court properly granted the defendant's motion to suppress the evidence.

■ The State argues that the defendant had no expectation of privacy in the missing VIN plates, so the police officers' observations and photos of them were not protected by the fourth amendment. While the missing VIN plates may have been in public view, the police were not present as members of the general public. They were there in furtherance of an illegal search and seizure. (See *People v. Madison* (1988), 121 Ill. 2d 195, 520 N.E.2d 374.) The trial court therefore correctly included their observations and photos in its suppression order.

■ The State also argues that the officers' good-faith reliance on our decision in *People v. Potter* (1986), 140 Ill. App. 3d 693, 489 N.E.2d 334, precludes application of the exclusionary rule to the instant search and seizure. We disagree. The good-faith exception has not been applied to a police officer's interpretation of a court decision and we find no basis for now doing so. Further, we note that the State's interpretation of *Potter* is suspect given the supreme court's holding in *Madison* that *Potter* did not stand for the proposition that through the first 24 hours of an inspection the State has *carte blanche* to search and seize as it wishes. *Madison*, 121 Ill. 2d at 205, 520 N.E.2d at 379.

Lastly, the State argues that this cause should be remanded so the trial court can decide whether the police obtained valid consent for the search and whether the defendant was in custody so as to require *Miranda* warnings. The State notes that both issues were fully litigated but were not ruled upon by the trial court.

■ In granting the defendant's motion to suppress, the trial court impliedly found that the police had not obtained proper consent to conduct the search. (See *People v. Haskell* (1968), 41 Ill. 2d 25, 241 N.E.2d 430, *overruled on other grounds by People v. Nunn* (1973), 55 Ill. 2d 344, 304 N.E.2d 81.) Further, the *Miranda* issue is moot, given

the trial court's suppression of the defendant's statements as the fruit of the unlawful search and seizure. See *People v. Bowen* (1987), 164 Ill. App. 3d 164, 517 N.E.2d 608.

The judgment of the circuit court of Will County is affirmed.

Affirmed.

SCOTT and BARRY, JJ., concur.