THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. PROLERIZED CHICAGO CORPORATION *et al.*, Defendants-Appellees.

First District (6th Division)   Nos. 1—90—1110, 1—90—1111 cons.

Opinion filed February 7, 1992.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Theodore F. Burtzos, and Joseph Brent, Assistant State's Attorneys, of counsel), for the People.

Pope & John, Ltd., of Chicago (Richard A. Devine, James D. Wilson, Fernando R. Carranza, and David F. Wentzel, of counsel), for appellee Prolerized Chicago Corporation.

Robert A. Loeb, of Chicago, for appellee Lawrence Kaplan.

John G. Quirk, of Palos Hills, for appellee Sheldon Cherney.

JUSTICE LaPORTA delivered the opinion of the court:

A grand jury returned indictments against defendants for failure to maintain proper records by a scrap processor licensed under the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1989, ch. 95½, par. 5—404). Prior to trial, defendants filed motions to quash their arrests and to suppress evidence, seeking to exclude the physical evidence seized by law enforcement officials from the premises of defendant Chicago

Prolerized Corporation (Prolerized). The trial court granted defendants' motions to suppress evidence and to quash their arrests, finding that the law enforcement officials should have obtained a search warrant. The court held that due to the officers' failure to obtain a warrant, the evidence at issue had been discovered during an illegal search and seizure. The trial court suppressed the physical evidence against defendants and dismissed the charges against them.

The State has appealed, asserting that the trial court erred in granting the defendants' motion and in dismissing the charges against them. On appeal, the State contends that the search of defendants' premises was a proper administrative inspection under the Code and that the evidence against defendants was properly seized.

The record indicates that on March 30, 1988, several Chicago police officers, along with inspectors employed by the Illinois Secretary of State, entered the premises of Prolerized, a scrap processor, and conducted an inspection of the corporation's books and records. Subsequently, defendants were indicted for failure to maintain proper records under section 5—404 of the Code. (Ill. Rev. Stat. 1987, ch. 95½, par. 5—404.) Prior to trial, defendants filed motions to quash their arrests and to suppress the physical evidence against them, claiming that the search of the premises and records of Prolerized was illegal as was the seizure of evidence discovered during the search.

Defendants' motions asserted that (1) at the time of the search, they were not violating any Federal, State or local law and there existed no probable cause to make the arrest, search and seizure, (2) the search and seizure were made without a warrant or any authority, and (3) the law enforcement officials used the authority granted them to make administrative inspections of scrap yards as a pretext or ruse to search for evidence of criminal activity in contravention of the principles established by the Illinois Supreme Court in *People v. Madison* (1988), 121 Ill. 2d 195, 520 N.E.2d 374, and followed by the appellate court in *People v. Winemiller* (1989), 179 Ill. App. 3d 1063, 535 N.E.2d 94.

At the hearing on defendants' motion to quash their arrests and to suppress evidence, the trial court heard testimony from several of the law enforcement officers who participated in the inspection of the books and records kept by Prolerized.

Chicago police officer Dennis Hays testified that on March 30, 1988, he was assigned to the auto theft unit and his duties included conducting inspections of scrap processors licensed under the Code.

On March 30, 1988, Hays went to Prolerized along with Chicago police officers Sesso, Welch, and McNally and with Sergeant Dowdle

and Investigator Grandberry, who were employed as investigators for the Illinois Secretary of State. Hays stated that when he and the other law enforcement officials entered the premises of Prolerized on March 30, 1988, they did not have a search warrant. Hays stated further that his purpose in going to Prolerized was to conduct an inspection of the records which Prolerized was required to keep pursuant to section 5—403 of the Code. (Ill. Rev. Stat. 1987, ch. 95½, par. 5—403.) Hays testified that his lieutenant instructed him to inspect the records kept by Prolerized but did not tell him to conduct a criminal investigation of the corporation. Hays also stated that he was unaware of any criminal investigation of Prolerized.

Hays testified that defendant Cherney was in the corporation's office when he and the other officers arrived on the premises of Prolerized and that Cherney indicated that he was the manager of Prolerized. Hays informed Cherney that the officers were there to conduct an official inspection of the records kept by the corporation. Hays then inspected the operator's license issued to Prolerized and observed that defendant Kaplan was listed on the license.

During the inspection, Hays requested that Cherney produce the Illinois automobile titles, junking certificates, junking manifests, and uniform invoices in addition to records indicating vehicle identification numbers, color descriptions, and the names of the sellers of the vehicles, and whether the vehicles were purchased from dealers or from individuals. The only documents produced by Cherney consisted of uniform invoices, weight tickets, and file cards bearing the names of the truck drivers who had delivered vehicles to Prolerized.

Hays explained that uniform invoices were used by automobile parts recyclers to document the vehicles shipped to a scrap processor. Weight tickets are generated by a machine that weighs vehicles brought to Prolerized, and then the drivers who deliver the vehicles to the corporation are paid according to the weight of the vehicles. The weight ticket is actually a copy of the check issued as payment to the driver who has delivered the vehicle. The file cards kept by Prolerized listed the names and addresses of various truck drivers, each of whom had been assigned an identification number by Prolerized.

Hays testified that he requested additional records from Cherney, including uniform invoices prepared by Prolerized and records which documented the vehicles purchased by Prolerized and still on its property. Cherney responded that Prolerized did not always take a uniform invoice, depending upon whether the truck driver offered one or even had one in his possession. Cherney was unable to produce any of the additional records requested by Hays.

Hays examined the records that were produced by Cherney while Sesso, Grandberry, and Welch inspected vehicles that were on the premises. These officers wrote down the vehicle identification numbers of the cars on the corporation's property and interrogated people who were in the yard. When the officers concluded their inspection of Prolerized, defendant Cherney was arrested.

Officer Sesso testified that he was assigned to the auto theft unit and had worked in the area around Prolerized from January through March of 1988. During this three-month period, Sesso stopped tow truck drivers and car haulers who operated in that vicinity.

Sesso testified further that during this three-month period, he arrested certain truck drivers, including George Vaughn, arrested on January 14 and 22, 1988, Wilbert Brownlee, arrested on March 7, 1988, and James Williams, arrested on March 29, 1988. Sesso stated that he recovered and inventoried automobile titles held by these truck drivers after the vehicles had been sold. Sesso denied that these drivers told him that Prolerized refused to accept the titles to vehicles. Sesso was, however, impeached on cross-examination through the use of a police report identified as a "State's Attorney's 101 Information Form" which was prepared and presented for the indictment of Prolerized. The report reflected that the truck drivers told Sesso that Prolerized routinely refused to accept titles to automobiles delivered by the drivers.

The defense then recalled Officer Hays, who testified that he prepared the "State's Attorney's 101 Information Form" several months after the arrest of defendant Cherney following the administrative inspection conducted on March 30, 1988. Hays stated that the report was prepared for presentation to the grand jury, but he could not recall specifically what information had been obtained from particular sources.

After Hays testified, the defense rested, and the State moved for a directed finding. Upon hearing arguments of counsel, the trial court denied the State's motion for a directed finding.

Thereafter, the State called Chicago police officer Welch, who testified that he was assigned to the auto theft unit and had been instructed by his lieutenant to conduct an inspection of the premises of Prolerized. Welch indicated that he had supervised the inspection of Prolerized, and that after he and the other officials arrived, he went outside to conduct a physical investigation of the vehicles and the parts located in the yard in order to check their identification numbers. Welch stated further that following the inspection, Cherney was arrested for failure to keep records as required by section 5—403 of

the Code. Welch indicated that the officers decided to arrest Cherney because vehicles had been brought in with no titles and no proof of ownership.

The State then called Patrick Dowdle, who testified that he was employed by the Inspector General's office of the Secretary of State. Dowdle stated that he assisted the Chicago police officers in the inspection of Prolerized along with Inspector Grandberry and Inspector Sanchez from the Secretary of State's office.

Dowdle testified that he questioned an employee of Prolerized about the manner in which the corporation kept records of the vehicles that were delivered there. This employee responded that the number on the boom of the tow truck was matched with one of the file cards kept by Prolerized to identify the company that brought the vehicle in. A weight ticket was then generated based upon the weight of the vehicle delivered. Dowdle stated further that defendant Cherney admitted that Prolerized did not take titles to vehicles, but only used the weight tickets to record vehicles delivered. Dowdle stated that while he was present on the premises of Prolerized, he observed several tow trucks arrive without leaving any titles or other identification for the vehicles they had sold to Prolerized.

Officer Hays was then recalled and testified that during the inspection of Prolerized he and Dowdle were inside the corporation's office inspecting the records while Sesso and Grandberry were outside inspecting the vehicles on the premises. Hays stated that when he asked Cherney for the records of purchased vehicles kept by Prolerized, Cherney responded that he did not have any and that employees of Prolerized did not request any documentary proof of ownership for the vehicles purchased by the corporation.

Hays testified further that during the course of the inspection, Sesso spoke with three tow truck drivers, Shelton, Kurrek, and Brightwell, who told him that they had sold vehicles to Prolerized but did not deliver to Prolerized any ownership documents for those vehicles. Hays stated that Shelton, one of the tow truck drivers, was arrested at that time.

Upon consideration of the evidence presented and the arguments of counsel, the trial court granted defendants' motions to quash their arrests and to suppress the evidence against them, finding that the police department had initiated a criminal investigation of the business practices of Prolerized prior to the inspection on March 30, 1988. The court held that the officers should have obtained a search warrant prior to inspecting the records and premises of Prolerized. The State has appealed the trial court's ruling.

■ The Illinois Vehicle Code requires that scrap processors keep and maintain certain records, including a certificate of title, a salvage certificate, a junking certificate, a Secretary of State junking manifest, a uniform invoice, a certificate of purchase, or other similar documentary proof of ownership for each vehicle they accept. (Ill. Rev. Stat. 1987, ch. 95½, par. 5—401.2(f).) The Code also provides that the failure to keep the records specified above constitutes a Class 2 felony. Ill. Rev. Stat. 1987, ch. 95½, par. 5—404(a).

■ Section 5—403 of the Code authorizes representatives of the Secretary of State and other peace officers to conduct inspections of the books and records of scrap processors for the purpose of reviewing the required records to assess the accuracy and completeness of those records. Ill. Rev. Stat. 1987, ch. 95½, par. 5—403(1).

Section 5—403(6) of the Code provides as follows:

"In the event information comes to the attention of the individuals conducting an inspection that may give rise to the necessity of obtaining a search warrant, and in the event steps are initiated for the procurement of a search warrant, the individuals conducting such inspection may take all necessary steps to secure the premises under inspection until the warrant application is acted upon by a judicial officer." Ill. Rev. Stat. 1987, ch. 95½, par. 5—403(6).

On appeal, the State asserts that the trial court erred in dismissing the charges against defendants because the inspection of the books and records kept by Prolerized was an appropriate "administrative inspection" and was authorized by section 5—403(1) of the Code. The State urges that a search warrant was not required as long as (1) the purpose of the "administrative inspection" was to assess the accuracy and completeness of the required records, (2) the evidence obtained during the inspection related to the failure to maintain proper records, and (3) the defendants were indicted for the failure to maintain proper records. We note, however, that the State has provided no Illinois authority which supports its assertion. None of the cases relied upon by the State involved an inspection conducted pursuant to the statutory sections at issue here. In addition, the State's position ignores the language of section 5—403(6) of the Code and is contrary to the current Illinois case law.

■ The language of section 5—403(6) clearly contemplates that a search warrant be obtained if evidence of a violation of the Code is discovered by the officials who are conducting the inspection, and this section makes specific provisions for securing the premises under inspection in the event a warrant must be obtained. Reading this provi-

sion together with section 5—403(1), it becomes evident that the legislature intended to authorize warrantless inspections of records only during routine "administrative inspections" conducted in order to assess the accuracy and completeness of the required records.

This construction of the Illinois Vehicle Code was approved in *People v. Madison* (1988), 121 Ill. 2d 195, 520 N.E.2d 374, *cert. denied* (1988), 488 U.S. 907, 102 L. Ed. 2d 246, 109 S. Ct. 257, where the Illinois Supreme Court held that nothing in the Code permitted officials to execute a warrantless seizure of records or other evidence discovered during an inspection. (*Madison*, 121 Ill. 2d at 201, 520 N.E.2d at 377.) The court held further that warrantless inspections were authorized only for the limited purpose of checking the accuracy and completeness of the records kept by scrap processors. (*Madison*, 121 Ill. 2d at 200, 520 N.E.2d at 377.) The supreme court concluded that the gathering of evidence for criminal prosecutions was outside the narrow scope of authority given the State to conduct administrative inspections and that any information uncovered that could serve as the basis for a criminal prosecution required that a warrant be obtained. *Madison*, 121 Ill. 2d at 201, 520 N.E.2d at 377. See also *People v. Winemiller* (1989), 179 Ill. App. 3d 1063, 1065, 535 N.E.2d 94, 96.

The Illinois Supreme Court also found in *Madison* that section 5—403(6) was intended to provide safeguards designed to limit the discretion of State officials by restricting the manner in which warrantless inspections could be conducted. (*Madison*, 121 Ill. 2d at 204, 520 N.E.2d at 379.) The court held that this section of the statute was enacted to protect against the possible abuses of administrative searches by requiring that the neutral judgment of a magistrate or judge be obtained before allowing State officials to seize evidence of criminal activity discovered during inspections. (*Madison*, 121 Ill. 2d at 205, 520 N.E.2d at 379.) The supreme court noted that because section 5—403(6) imposed additional restrictions on the manner in which warrantless searches may be conducted, the language of the statute could not be read or interpreted in such a way as to render those restrictions meaningless. *Madison*, 121 Ill. 2d at 203, 520 N.E.2d at 378.

■ We find that the reasoning employed by the supreme court in *Madison* governs the instant case, and the conclusion reached by that court is controlling here.

The State seeks to avoid the result reached in *Madison* by attempting to distinguish that case from the case at bar. The State notes that *Madison* was not decided under traditional fourth amendment principles. The State further points out that the inspection in

*Madison* was initiated in response to a neighbor's complaint concerning the condition of the defendant's premises. The State focuses upon the language in *Madison* where the court held that administrative inspections may not be used as a pretext to search for evidence of criminal violations and that if the primary object of the search is to gather evidence of criminal activity a search warrant based upon probable cause must be obtained. *Madison*, 121 Ill. 2d at 209-10, 520 N.E.2d at 381. See also *Winemiller*, 179 Ill. App. 3d at 1066, 535 N.E.2d at 96.

The State urges that because the administrative inspection in the case at bar was not in response to a neighbor's complaint about the defendants' premises and because the primary object of the search was not to gather evidence of criminal activity, the *Madison* decision should not govern the instant case. This claim is without merit.

A careful reading of the decision in *Madison* reveals that the supreme court fully considered the same arguments made by the State here and rejected those arguments for the reasons set forth above. Only after going through a complete analysis of these claims and concluding that the statute required a warrant before evidence discovered during an inspection could be seized did the court add that administrative inspections could not be used as a pretext to search for evidence of criminal violations. Thus, this rule was included at the end of the opinion after the court had already determined that the relevant statutory sections precluded officials from obtaining or seizing without a warrant evidence of criminal violations which have been uncovered during an administrative inspection. The distinction sought to be drawn by the State is unfounded, and we hold that the reasoning and rule established in *Madison* must be applied in the case at bar.

The evidence in the record established that the law enforcement officials who participated in the administrative inspection knew or suspected that Prolerized was in the practice of purchasing vehicles without accepting titles or other ownership documents for the vehicles. This evidence indicates that the purpose of the inspection of Prolerized was not merely to review the corporation's business records. The trial court specifically found that a criminal investigation of Prolerized had begun prior to the inspection on March 30, 1988. Based upon this record, the trial court could properly conclude that the administrative inspection was merely a subterfuge allowing the police to enter the defendants' premises with the expectation that they would find evidence of illegal activities. (See *Madison*, 121 Ill. 2d at 209-10, 520 N.E.2d at 381; *Winemiller*, 179 Ill. App. 3d at 1066, 535 N.E.2d at 96.) Consequently, we hold that no error occurred where the trial

court granted the defendants' motions to quash their arrests and to suppress the evidence against them.

The State contends that because the actions of the law enforcement officers were "objectively reasonable," any evidence obtained during that inspection should have been held to be properly admissible against defendants under the fourth amendment.

In support of this position, the State relies upon a multitude of cases construing the fourth amendment, including *Colonnade Catering Corp. v. United States* (1969), 410 F.2d 197, *rev'd on other grounds* (1970), 397 U.S. 72, 25 L. Ed. 2d 60, 90 S. Ct. 774. In *Colonnade*, agents of the Internal Revenue Service believed that the defendant had unlawfully refilled and resealed liquor bottles in violation of the Federal tax code (26 U.S.C. §5301(c) (1988)). Acting on this belief, the agents entered the premises of the defendant and seized 2 funnels and 53 bottles containing alcoholic spirits. The defendant challenged the seizure of its property, and the court held that a prior suspicion of statutory violations did not make the subsequent warrantless inspection unreasonable. The court's decision was premised upon the Federal statute (26 U.S.C. §7606(a) (1988)) authorizing tax inspectors to enter the premises of a dealer in liquor in order to examine the alcoholic beverages held by that dealer. This statute, however, did not contain any language which would require that a warrant be obtained before evidence of a crime could be seized. Thus, the statutory scheme governing the actions of the Federal agents in *Colonnade* was fundamentally different from the Illinois Vehicle Code in that it did not include any provision which could be considered analogous to section 5—403(6).

Similarly, the United States Supreme Court held in *Michigan v. Clifford* (1984), 464 U.S. 287, 294, 78 L. Ed. 2d 477, 484, 104 S. Ct. 641, 647, that if evidence of criminal activity is discovered during the course of a valid administrative search, it may be seized under the "plain view" doctrine. In *Clifford*, the Supreme Court found that the fourth amendment did not preclude arson investigators from conducting a warrantless nonconsensual search of the respondents' private residence which had been damaged in a fire. The Supreme Court reaffirmed its holding that administrative searches generally require warrants, but found that because the determination of the cause and origin of a fire serves a compelling public interest, the warrant requirement does not apply in such cases. The court went on to note that evidence of criminal activity seized during an administrative search may be used to establish probable cause to obtain a criminal search warrant, but fire officials may not rely on this evidence to ex-

pand the scope of their administrative search. The court noted further that circumstances that justify a warrantless search for the cause of a fire may not justify a search to gather evidence of criminal activity once that cause has been determined.

We find that the decisions in *Colonnade* and *Clifford* are factually distinguishable from the case at bar and, consequently, are not controlling here. Accordingly, we hold that the order of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and RAKOWSKI, JJ., concur.