THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. PATRICIA NASH, Defendant-Appellee.

Fifth District    No. 5—95—0072

Opinion filed February 27, 1996.

Rod Irvin, State's Attorney, of Vandalia (Norbert J. Goetten, Stephen E. Norris, and Mary H. Doyle, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

LeFevre, Zeman, Oldfield & Lawinger Law Group, Ltd. (Larry L. LeFevre, of counsel), for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Patricia Nash was charged with four counts of forgery, one count of committing a fraudulent act in the cutting and purchase of timber, two counts of obstructing justice, and one count of knowingly and willfully failing to pay as agreed for timber. An additional two counts of failure to pay timber grower as agreed were transferred to Fayette County from Crawford County and were consolidated with the case in Fayette County. Nash filed a motion to suppress, which alleged

that the evidence seized and the statements made by her were the fruit of a warrantless search. The trial court granted the motion and suppressed the physical evidence seized and statements obtained as a result of the search conducted on August 30, 1993, at Nash's place of business. The State filed a certificate of impairment and appealed. We affirm.

At the hearing on the motion to suppress, Debbie Mansell, a conservation police officer, testified that she was assigned to Region 3, District 11, which does not cover Fayette County. Mansell testified that on July 17, 1993, she contacted Dominic Skaperdas, who had reported that trees had been cut on his property without his permission. Mansell determined that CNN Wood Products, a company for which Patricia Nash was a licensed buyer, had been cutting Skaperdas' trees without his permission. Officer Mansell informed Skaperdas that she would wait until July 31, 1993, the date by which Nash had to pay a 4% timber-harvest tax, to continue the investigation. Mansell testified that Nash did not pay the harvest tax on Skaperdas' timber. She further testified that on August 25, 1993, she had enough information to conclude that Nash had committed a felony.

Officer Mansell testified that at the time of the inspection and seizure of the records she was acting under the authority of section 9 of the Timber Buyers Licensing Act (Act) (225 ILCS 735/9 (West 1994)). Officer Mansell telephoned Nash on August 26, to advise her that Mansell and Officer Martin were coming to inspect her timber records. Before the inspection, the officers were aware that Nash had a previous conviction for failure to pay the timber-harvest fee. The officers did not have a warrant to search or seize Nash's records, nor did they have a warrant to arrest her. Mansell testified that on August 30 she and Officer Martin went to Nash's business office and requested all of Nash's timber-buying records for 1992 and 1993. The officers did not read the *Miranda* warnings to Nash. Officer Martin informed Nash that she was to provide certain information in accordance with State law and that, if she did not provide that information, she might be guilty of obstruction of justice. The officers asked Nash if everything was available to them, and she said that it was. Nash showed the officers to the kitchen table where she had placed the files for their inspection. During the three hours the officers were at Nash's business, which is also her home, the officers questioned Nash about various entries that were made in the files. Officer Mansell testified that at that time Nash told them that she had added paperwork to the files to make them "look right" for the inspection. The officers seized all of the files Nash showed them. After seizing the files, Mansell and Martin made a systematic review of the files

and contacted landowners and timber mills to obtain additional documentation regarding evidence of criminal activity. Mansell testified that Nash never asked them to leave and never requested that an attorney be present. Officer Martin's testimony corroborated that of Officer Mansell.

Patricia Nash testified that on August 30, 1993, Officers Mansell and Martin came to her home and seized her files. Nash testified that she allowed them to look at the files because she did not believe that she had a choice in the matter.

The trial court suppressed the evidence seized on August 30 and Nash's statements made on that date. The court found that the State's reliance on the "plain view" doctrine was misplaced. Relying on *People v. Madison* (1988), 121 Ill. 2d 195, 520 N.E.2d 374, the court also found that because the officers conducted the warrantless search as part of an ongoing criminal investigation, a conclusion which was supported by the fact that neither officer was assigned to the region which includes Fayette County, the physical evidence and statements should be suppressed. The court found, however, that had the files been discovered in the course of a routine administrative search, no warrant would have been necessary for their seizure.

■ Section 9 of the Timber Buyers Licensing Act provides:

"The Department may inspect the premises used by any timber buyer in the conduct of his or her business at any reasonable time and the books, accounts, records and papers of every such timber buyer shall at all times during business hours be subject to inspection by the Department." (225 ILCS 735/9 (West 1994).)

The Act also lists activities which, if found to have been conducted, constitute a violation of the Act. (See 225 ILCS 735/5 (West 1994).) The State argues that a search warrant was not required because (1) section 9 allows officers to conduct warrantless searches of timber records to ascertain if the Act has been violated, and (2) the purpose of the search in this case was to ascertain if defendant had in fact violated the Act. We cannot agree.

In *People v. Prolerized Chicago Corp.* (1992), 225 Ill. App. 3d 307, 587 N.E.2d 1175, defendants were indicted for failure to maintain the records required of a licensed scrap processor, and they moved to quash their arrests and suppress evidence. The court granted motions to suppress and quash, based on a finding that the officials should have obtained a search warrant before seizing the evidence. The appellate court held that the scrap processor statutes clearly contemplated that a search warrant would be obtained if evidence of code violations was discovered during routine inspection and that the evidence indicated that inspection of the defendant's premises was

not a routine inspection for the purposes of confirming the accuracy of records but rather was designed to acquire proof of criminal activities. The court affirmed the trial court's determination that a search warrant was required before evidence could be seized.

The statute authorizing the administrative search in *Prolerized* specifically required a search warrant before evidence of criminal activities could be seized. Likewise, in *People v. Madison* (1988), 121 Ill. 2d 195, 520 N.E.2d 374, the case relied on by the trial court in this case, the statute at issue contemplated that the officers would obtain a warrant before seizing any evidence discovered during the course of an investigation.

■ The State argues that these cases are distinguishable because the statute in *Prolerized* and *Madison* specifically included a warrant requirement, which is not the case in the Timber Buyers Licensing Act. Although the State's argument is correct, it is also correct that:

> "One of the fundamental principles of administrative searches is that the government may not use an administrative inspection scheme as a pretext to search for evidence of criminal violations." (*Madison*, 121 Ill. 2d at 209, 520 N.E.2d at 381.)

(See *Prolerized*, 225 Ill. App. 3d at 315, 587 N.E.2d at 1180.) Both *Madison* and *Prolerized* stand for that proposition.

The cardinal rule of statutory construction is that courts should ascertain and give effect to the legislature's intention in enacting the statute. Thus, courts must give the language of the statute its plain and ordinary meaning. (*Maloney v. Bower* (1986), 113 Ill. 2d 473, 479, 498 N.E.2d 1102, 1104.) Section 9 of the Timber Buyers Licensing Act authorizes the Department of Conservation to conduct administrative searches of timber buyers' records, and no warrant requirement is specifically set forth in the statute. This does not mean, however, that timber buyers do not come under the protections of the fourth amendment.

■ Searches for administrative purposes, like searches for evidence of crime, are encompassed by the fourth amendment. (*Michigan v. Tyler* (1978), 436 U.S. 499, 56 L. Ed. 2d 486, 98 S. Ct. 1942.) The rule that warrantless searches are generally unreasonable applies to commercial premises as well as homes. (*Marshall v. Barlow's, Inc.* (1978), 436 U.S. 307, 312, 56 L. Ed. 2d 305, 311, 98 S. Ct. 1816, 1819.) Except in certain carefully defined classes of cases, a search of private property without proper consent is unreasonable unless it has been authorized by a valid search warrant. (*Tyler*, 436 U.S. at 507, 56 L. Ed. 2d at 497, 98 S. Ct. at 1948.) It has been held that industries such as liquor (see *Colonnade Catering Corp. v. United States* (1970), 397 U.S. 72, 25 L. Ed. 2d 60, 90 S. Ct. 774) and firearms

(see *United States v. Biswell* (1972), 406 U.S. 311, 32 L. Ed. 2d 87, 92 S. Ct. 1593) fall within the "certain carefully defined classes of cases" which have no reasonable expectation of privacy. The question in this case is whether the enforcement scheme of the Timber Buyers Licensing Act authorizes warrantless searches and seizures under the circumstances of this case. Warrantless searches and their inherent element of surprise may be necessary to assure that the timber industry is operating within the law. Does the authority to conduct such searches extend to officers acting outside of their assigned geographic region, who readily admit that they had enough information to conclude that Nash had committed a felony prior to conducting the search that led to criminal charges being filed?

The reasonableness of a warrantless search depends upon the specific enforcement needs and privacy guarantees of each statute. (*Marshall*, 436 U.S. at 322, 56 L. Ed. 2d at 317, 98 S. Ct. at 1825.) Our concern is not the unannounced search authorized by section 9, a routine administrative inspection to monitor the accuracy of timber-buyer records. In this case we are not called upon to question the legislative authorization of warrantless searches in a routine inspection. Our concern is a search conducted under the auspices of section 9 to further an admittedly ongoing criminal investigation.

■ The State perceives no difference between the two searches. It argues that because the statute allows searches for the purpose of investigating whether criminal conduct is occurring, the officer's knowledge that criminal conduct has already occurred does not negate the authority the officer otherwise clearly had. We do not agree.

The privacy interests of timber buyers may be limited by the statutorily authorized search of records to routinely ascertain whether violations of the Act have been committed. The routine administrative search evolves into an unreasonable usurpation of the timber buyer's privacy interests when it is used as a tool to further a criminal investigation where evidence of criminal activity is already present. A trial court's determination on a motion to suppress will not be overturned unless it is manifestly erroneous. (*People v. Galvin* (1989), 127 Ill. 2d 153, 162-63, 535 N.E.2d 837, 841.) Based on the foregoing, we cannot find that the trial court abused its discretion.

Affirmed.

MAAG and KUEHN, JJ., concur.